[652 NYS2d 249]

In the Matter of the Arbitration between ANDREW BRENNER, Respondent, and NOMURA SECURITIES INTERNATIONAL, Appellant. NEW YORK STOCK EXCHANGE, INC., Intervenor-Appellant.

First Department, December 24, 1996

## APPEARANCES OF COUNSEL

*Leslie D. Corwin* of counsel, New York City *(Jerome Tarnoff* and *Kieran X. Bastible* on the brief; *Morrison Cohen Singer & Weinstein, L. L. P.,* attorneys), for respondent.

*Michael J. Dell* of counsel, New York City *(David A. French* on the brief; *Kramer, Levin, Naftalis & Frankel,* attorneys), for appellant.

*Russell E. Brooks* of counsel, New York City *(B. Kelly Kiser* on the brief; *Milbank, Tweed, Hadley & McCloy,* attorneys), for intervenor-appellant.

## OPINION OF THE COURT

KUPFERMAN, J.

Petitioner was terminated from his position as a director and head government trader in the New York office of respondent Nomura Securities International on May 22, 1996. On or about May 23, 1996, petitioner filed a demand for arbitration against Nomura with the National Association of Securities Dealers, Inc. (NASD) alleging, *inter alia*, breach of the employment contract and a covenant of good faith and fair dealing.

On May 24, 1996, the IAS Court granted petitioner a temporary restraining order which enjoined Nomura from filing a Uniform Termination Notice for Securities Industry Registration (Form U-5) with NASD or the New York Stock Exchange (NYSE) and granted petitioner's request for an order directing Nomura to appear before the court and show why it should not be prohibited from filing such a form pending the conclusion of arbitration. At issue was question number 15 on Form U-5 which asks member organizations whether a terminated employee is or was "under internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct?" If the member organization answers affirmatively, it must provide additional information. Once the form is submitted, it is entered into the Central Registration Depository, which is a computerized database accessible to self-regulatory organiza-

tions, such as NYSE. Securities companies must review U-5 forms concerning any prospective employee.

According to petitioner, a preliminary injunction was necessary to prevent his "preeminent reputation in the primary and secondary securities market for the past 14 years" from being destroyed and thus suffering irreparable injury because of diminished employment opportunity.

However, in late May 1996, petitioner told Bloomberg News Service that he had filed an arbitration claim against Nomura because he believed that the company would defame him in a Form U-5. He told the service that he had been accused of overvaluing government securities. The Wall Street Journal published a similar story based on petitioner's court documents and comments.

On June 14, 1996, the IAS Court granted petitioner's request for a preliminary injunction to the extent of ordering that Nomura seal any filed Form U-5, "meaning" Nomura, NYSE and NASD were prohibited from disseminating the contents of the form. That decision and order was subsequently incorporated in and superseded by the same court's order entered July 11, 1996. Initially, the court noted that petitioner's specific objection to the filing of the U-5 form was to question number 15. The court then addressed the issue of whether CPLR 7502 (c) requires the court, when determining an application for a preliminary injunction, to consider only whether an arbitration award will be "rendered ineffectual" if the injunction is not granted or to consider the customary equitable criteria, i.e., (1) likelihood of success on the merits; (2) a balancing of the equities; and (3) danger of irreparable injury, citing *Albini v Solork Assocs.* (37 AD2d 835). The court stated that the traditional test should be applied.

After noting that Nomura is compelled under certain NYSE regulations to file a Form U-5, the court expressed its belief that "it is a public scandal to allow a federally-sponsored and mandated procedure to ruin the 14-year career, in this case, of a person who may be entirely blameless and do so without consequence to the individual whose career is ruined".

The court then stated that it appreciated that NYSE's termination reporting requirements are Federally mandated and serve a legitimate public interest. The court also indicated that it knew that petitioner had gone to the press and revealed that he had been accused of misvaluing securities. However, it stated that going to the press is not the same thing as having every prospective employer know that an individual is suspected of fraud.

The court then rejected Nomura's argument that section 27 of the Securities Exchange Act of 1934 (15 USC § 78aa) preempted it from considering the matter. That section, the court noted, provides that the United States District Courts will have jurisdiction of all violations of the Securities Exchange Act and of all actions brought in equity or law which are brought to enforce a liability or duty created by said act.* The court held that the statute did not apply because petitioner's application did not seek enforcement of any liability or duty nor did it seek to prosecute any violation of rules or regulations. However, the court acknowledged that its interpretation was very narrow and that the statute could be read to mean that the court did not have jurisdiction because it was interfering with Nomura's duty to file a Form U-5.

The court then again indicated that it respected the fact that the NYSE regulatory scheme was designed to protect the public interest. However, it stated that such interest should give way to petitioner's interest in "fairness and his right to avoid mooting that part of his demand in the demand for arbitration that Nomura be compelled to file an accurate or a correct U-5". It went on to say that whether Nomura's Form U-5 is correct cannot be known until after arbitration or maybe even after a full NYSE or NASD investigation. Thus, the court ordered that Nomura file a sealed Form U-5 pending arbitration and that it, NYSE and NASD be prohibited from disseminating the form's contents. The court expressed its belief that it was not interfering with the regulatory framework because NYSE officials would be able to look at the form and proceed with an investigation. We disagree.

Although it is settled that preemption of State law by Federal statute or regulation is not favored absent persuasive reasons to the contrary (see, Guice v Charles Schwab & Co., 214 AD2d 53, 55, revd on other grounds 89 NY2d 31), a State law can be deemed preempted if it conflicts with Federal law or frustrates the accomplishment of the purposes of the Federal scheme (see, Malone v White Motor Corp., 435 US 497, 504; Florida Avocado Growers v Paul, 373 US 132, 142-143).

The Securities Exchange Act requires national securities exchanges, such as NYSE, to register with the Securities and

---

* That section specifically reads: "The district courts of the United States * * * shall have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder." (Ibid.)

Exchange Commission (*see,* 15 USC § 78f [b]). Although the Securities Exchange Act provides for the self-regulation of the securities·markets, stock exchanges are subject to the supervisory authority of the Securities and Exchange Commission (SEC) (*see, Merrill Lynch, Pierce, Fenner & Smith v Ware,* 414 US 117, 127-129). Under its authority, the SEC monitors the rules and regulations of the exchanges to ensure that they protect investors and the public interest (*see, supra; Silver v New York Stock Exch.,* 373 US 341, 361; 15 USC § 78f [b] [5]) and has the authority to change those rules in any way (*see,* 15 USC § 78s [c]). The exchanges, however, are charged with the registration and oversight of industry personnel (*see,* SEC Release No. 34-28366, 1990 SEC LEXIS 2955, *5; 15 USC § 78f [b] [6], [7]). In order to facilitate supervision of those personnel, NYSE has implemented, and the SEC has approved, Rule 345 (*see,* 1990 SEC LEXIS 2955, *op. cit.;* SEC Release No. 34-30176, 1992 SEC LEXIS 190), which requires that member organizations file a Form U-5 within 30 days of an employee's termination (2 NYSE Guide [CCH] ¶ 2345.17 [a]). The rule also requires employers to review U-5 forms concerning any prospective employee (*id.,* ¶ 2345.11).

As Nomura and NYSE argue, Form U-5 and Rule 345 constitute a reporting measure which is part of what this Court described, in *Herzfeld & Stern v Beck* (175 AD2d 689, 691, *lv dismissed without opn* 79 NY2d 914, *lv dismissed* 82 NY2d 789) to be, a "comprehensive system of oversight and self-regulation by the NYSE" implemented pursuant to the Securities Exchange Act. Although the IAS Court's order allows for technical compliance with NYSE Rule 345.17 (a), it prohibits dissemination of petitioner's Form U-5 to other self-regulatory organizations and prospective employers. It also hinders prospective employers from fulfilling their obligation of reviewing petitioner's U-5 form (2 NYSE Guide [CCH] ¶ 2345.11, *op. cit.*). It, therefore, directly conflicts with one of the Securities Exchange Act's principal objectives, investor protection, by depriving other security firms of information concerning a potentially corrupt trader.

Authority that the court's issuance of the injunction under CPLR 7502 (c) was preempted by Federal law can be found in *Merrill Lynch, Pierce, Fenner & Smith v Ware* (414 US 117, *supra*). In that case, the Supreme Court held that a California statute, which provided an employee a cause of action to recover unpaid wages regardless of any private agreement to arbitrate, was not preempted by NYSE Rule 347, compelling

arbitration. The Court found that nothing in the Securities Exchange Act or any SEC rule mandated arbitration and rejected Merrill Lynch's claim that there was a substantial relationship between the arbitration agreement and the Securities Exchange Act's purposes of promoting fair dealing and investor protection. However, the Court noted that NYSE Rule 345 (b) and (d), which respectively permitted NYSE to disapprove of an individual's employment and to punish malfeasance, were measures worthy of Federal protection. Specifically, the Court stated that NYSE's "measures * * * designed to insure fair dealing and to protect investors, are of the kind directly related to the Act's purposes and ordinarily would not be expected to yield to provisions of state law." (*Merrill Lynch, Pierce, Fenner & Smith v Ware, supra,* at 136.)

Petitioner's contention that Federal preemption does not apply here because the self-regulatory organizations involved, NYSE and NASD, are private entities, unlike the SEC, is unavailing. This Court has found that NYSE acts as a quasi-judicial body which ensures that "members of the [securities] industry [adhere] to both the statutory mandates and ethical standards of the profession" and that member organizations are compelled by law to file U-5 forms in order to alert NYSE of the potential need to begin an investigation (*Herzfeld & Stern v Beck,* 175 AD2d 689, 691, *supra; accord, Culver v Merrill Lynch & Co.,* 1995 US Dist LEXIS 10017 [SD NY, July 17, 1995, Sand, J.] [following *Beck*]). Contrary to petitioner's suggestion, Nomura and NYSE do not cite *Beck* or *Culver* for the direct proposition that a Form U-5 cannot be enjoined pending arbitration. Rather, they cite those cases to support their contention that the Federal regulatory scheme involving the protection of investors is comprehensive and should not be usurped by State law. Finally, contrary to petitioner's contention, the issue is not whether the IAS Court's order conflicts with the Federal Arbitration Act, but rather whether, as discussed, it conflicts with the regulatory scheme of the Securities Exchange Act.

Inasmuch as Form U-5 and Rule 345 were implemented to protect investors (*see,* 1990 SEC LEXIS 2955, *5, *op. cit.;* 1992 SEC LEXIS 190, *op. cit.*) and the IAS Court's order, while well-intentioned, directly frustrates the accomplishment of that objective, the IAS Court was preempted from issuing its order.

Accordingly, the order of the Supreme Court, New York County (Stephen Crane, J.), entered July 11, 1996, which granted petitioner's motion for a preliminary injunction to the

extent of directing that any Uniform Termination Notice for Securities Industry Registration (Form U-5) concerning petitioner filed with the New York Stock Exchange and the National Association of Securities Dealers, Inc. be placed under seal pending the completion of arbitration between petitioner and respondent Nomura and prohibiting Nomura, NYSE or NASD from disseminating the contents of that form, should be reversed to the extent appealed from, on the law, without costs, and petitioner's motion for a preliminary injunction should be denied. The appeals from the order of the same court and Justice, entered June 19, 1996, should be dismissed, without costs, as superseded by the foregoing appeal.

ROSENBERGER, J. P., NARDELLI, TOM and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered July 11, 1996, reversed, to the extent appealed from, on the law, without costs, and petitioner's motion for a preliminary injunction denied, and appeals from order, same court and Justice, entered June 19, 1996, dismissed, without costs, as superseded by the appeal from the order of July 11, 1996.