OPINION OF THE COURT
Jane S. Solomon, J.
This action by the Commissioner of the Department of Social Services of the City of New York (the Department) against defendant Benjamin Spellman is brought to recover benefits paid under the auspices of the Federal Medical Assistance program (Medicaid) for the care of defendant’s wife, who is in a nursing home. Mr. Spellman moves to dismiss, raising an issue of first impression: whether, under the Social Services Law, the Department may recover the Medicaid assistance paid for the care of an institutionalized spouse from the community spouse, or whether such recovery is barred because there is no analogous Federal statutory scheme. As stated by defendant, "the sections of the Social Services Law upon which DSS relies are unequivocally preempted by the federal Medicaid statute. 42 U.S.C. §1396 et. seq.” As set forth below, I conclude that there is no such preemption.
FACTUAL BACKGROUND
For the purposes of this motion to dismiss, the factual allegations in the complaint are deemed to be true.
On or about January 1, 1994, Pearl Spellman, defendant’s wife, was admitted to Clearview Nursing Home, a skilled nursing facility. Mrs. Spellman applied for Medicaid coverage of *982 her nursing home charges and such coverage became effective as of April 1995. Mrs. Spellman is an "institutionalized spouse” as that term is defined by Social Services Law § 366-c (2) (a). Mr. Spellman is referred to as the "community spouse”. (Social Services Law § 366-c [2] [b].)
At the time of Mrs. Spellman’s application for Medicaid, the Department requested that defendant provide for his wife’s care, which he expressly refused to do. Mrs. Spellman’s application was nevertheless approved, since both State and Federal law require that Medicaid benefits be provided, notwithstanding the refusal to pay of an applicant’s responsible relative with sufficient income and resources.
From April 1 through December 15, 1995, the Department paid $32,975.25 for Mrs. Spellman’s care, and further charges accrue at the rate of $141.95 per day. So long as Mrs. Spellman remains eligible, the Department will continue to pay for her care, which accrues at $141.95 per day.
Under New York law, spouses are obligated for the support of each other. (Social Services Law § 101.) To prevent the impoverishment of both partners when one becomes institutionalized, a matter of grave concern at both the national and State level, the law recognizes the need for the community spouse to retain some property for his or her own benefit, permanently unencumbered by the spousal support obligation. The New York statute embodying the matter of calculating the shares of resources available to each spouse is section 366-c of the Social Services Law, entitled "Treatment of income and resources of institutionalized persons”.
It is implicit from the papers submitted on this motion that Mr. and Mrs. Spellman disclosed their financial affairs to the Department. Thereafter, the Department determined that, under the several provisions of section 366-c, Mr. Spellman’s resource allowance is $74,820 and he is allowed $1,871.88 in monthly income. However, Mr. Spellman, concededly a responsible party under section 101 (1) of the Social Services Law, has resources of $223,160.41, which exceed the allowable resource level calculation under section 366-c by $148,340.41. This led the Department to determine that Mr. Spellman has sufficient income and resources under the statute to provide financial assistance to Mrs. Spellman. By letter dated October 6, 1995 the Department demanded that he pay for her care (up to the amount his resources exceed the amount the statute permits him to keep). He refused. The Department then commenced this action. This motion then followed.
*983 STATUTORY FRAMEWORK
Title XIX of the Social Security Act, codified at 42 USC § 1396 et seq. (Medicaid Act), was established by Congress in 1965 as "a cooperative federal-state health benefits assistance program designed to provide necessary medical services to low income persons.” (Citizens Action League v Kizer, 887 F2d 1003, 1005 [9th Cir 1989], cert denied sub nom. Department of Health Seros. v Citizens Action League, 494 US 1056 [1990].) State and local governments responsible for administering Medicaid must abide by the requirements of the Medicaid Act to qualify for receipt of Federal funds.[1] (Supra.) Under the Medicaid Act, a State or local administering agency is required to "take all reasonable measures to ascertain the legal liability of third parties (including health insurers, group health plans * * * service benefit plans, and health maintenance organizations) to pay for care and services available under the plan”. (42 USC § 1396a [a] [25] [A].)
As relevant here, under Social Services Law § 366 (3) (a) the Department has "an implied contract with” a person in Mr. Spellman’s position from whom reimbursement may be sought. Section 366 (3) (c) specifically authorizes a proceeding "to compel any responsible relative to contribute to the support of any person receiving or liable to become in need of medical assistance”.
In 1988, Congress passed the Medicare Catastrophic Coverage Act (Pub L 100-360, 102 US Stat 683, codified at, inter alia, 42 USC § 1396r-5 [the MCCA]), which established rules for determining how much of an institutionalized spouse’s income must be used for his or her institutional care and how much may be contributed to support the community spouse. The MCCA also permitted a State to establish a minimum monthly needs allowance for the community spouse to be paid, if necessary, from income received by the institutionalized spouse. (See, Matter of Gomprecht v Gomprecht, 86 NY2d 47, 48 [1995].) In response to the MCCA, New York enacted Social Services Law § 366-c in 1989.
In determining whether an institutionalized spouse is eligible for medical assistance, all resources held by either the institutionalized spouse or the community spouse or both are considered available to the extent that the value of the resources exceeds the community spouse’s resource allowance *984 (Social Services Law § 366-c [5] [a]). The purpose of the spousal allowance provision is "to protect the community spouse from financial disaster”. (Matter of Schachner v Perales, 85 NY2d 316, 323 [1995].) Mrs. Spellman was not considered ineligible for medical assistance, even though assets held by Mr. Spell-man exceed his resource allowance, because he exercised his right of spousal refusal (42 USC § 1396r-5 [c] [3]; Social Services Law § 366 [3] [a]; § 366-c [5] [b]; see also, Matter of Da-Ronco, 167 Misc 2d 140, 143 [Sup Ct, Westchester County 1995]).
ALLEGATIONS
Mr. Spellman moves to dismiss, claiming that the only provision in the Medicaid Act regarding recovery of Medicaid benefits correctly paid is found in 42 USC § 1396p (b). This section provides that:
"(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in the case of the following individuals:
"(A) In the case of an individual described in subsection (a)(1)(B) [of this section], the State shall seek adjustment or recovery from the individual’s estate or upon sale of the property subject to a lien imposed on account of medical assistance paid on behalf of the individual.
"(B) In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual’s estate”.
Relying on the language that "[n]o * * * recovery * * * may be made, except” (42 USC § 1396p [b] [1]), Mr. Spellman maintains that Congress intended there be no recovery under any circumstances other than those enumerated, namely by a real property lien, or claim after death against an estate.[2] In other words, he contends that the New York statutes on which the Department relies are preempted by the Federal Medicaid Act.
The Department asserts that section 1396p is irrelevant because section 1396k authorizes it to seek recoupment from Mr. Spellman. Section 1396k provides that:
*985 "(a) For the purpose of assisting in the collection of medical support payments * * * a State plan for medical assistance shall—
"(1) provide that, as a condition of eligibility for medical assistance * * * the individual is required—
"(A) to assign the State any rights, of the individual * * * to support * * * and to payment for medical care from any third party * * *
"(C) to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan”. The Department claims that Mr. Spellman is a third party under 42 USC § 1396k and that Social Services Law § 366 (3) (a) expressly creates an implied contract between the Department and the community spouse, on which the Department may rely in seeking to recover the cost of such care.
Defendant argues that section 1396k applies only to third-party entities such as insurance companies, not a recipient’s spouse. Alternatively, even if section 1396k applies, he submits that the statute merely delineates eligibility requirements and does not confer a right of recovery. In essence, he argues that the statute, providing for care for his wife when he refuses to support her, reflects a governmental intention never to look to him again.
DISCUSSION
Under the Supremacy Clause (US Const, art VI, cl [2]), if Congress enacted a statute with the intention of exercising its authority to set aside the laws of a State, the Federal law must be followed and the State law is preempted. (Barnett Bank v Nelson, 517 US 25, 30.) As the Supreme Court noted in Barnett, when faced with the preemption question, courts sometimes: "find language in the federal statute that reveals an explicit congressional intent to pre-empt state law * * * More often, explicit pre-emption language does not appear, or does not directly answer the question. In that event, courts must consider whether the federal statute’s 'structure and purpose,’ or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent * * * A federal statute, for example, may create a scheme of federal regulation 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.’ * * * Alternatively, federal law may be in 'irreconcilable conflict’ with state *986 law * * * Compliance with both statutes, for example, may be a 'physical impossibility,’ * * * or, the state law may 'stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ” (517 US, at 31 [citations omitted].)
Preemption is disfavored absent persuasive reasons to the contrary, since there is an assumption that " 'the historic police powers of the States [are] not to be superseded by * * * Federal Act unless that [is] the clear and manifest purpose of Congress.’ ” (Cipollone v Liggett Group, 505 US 504, 516 [1992], quoting Rice v Santa Fe El. Corp., 331 US 218, 230 [1947]; Matter of Brenner [Nomura Sec. Intl.], 228 AD2d 67 [1st Dept 1996].) Our Court of Appeals recently commented that: "The preemption question is ultimately one of congressional intent * * * [Congressional preemptive intent may be shown from express language in the Federal statute; it may also be established implicitly because the Federal legislation is so comprehensive in its scope that it is inferable that Congress wished fully to occupy the field of its subject matter ('field preemption’), or because State law conflicts with the Federal law.” (Guice v Schwab & Co., 89 NY2d 31, 39 [1996] [citations omitted].)
Defendant contends that all three types of preemption (i.e., express, implied and conflict) apply here to bar this action. For the reasons set forth below, the State statutes at issue are not preempted under the Medicaid Act.
Express Preemption
Express preemption occurs when Congress proclaims directly its intention to preempt State law by so stating. (Medical Socy. v Cuomo, 777 F Supp 1157, 1161 [SD NY 1991], affd 976 F2d 812 [2d Cir 1992].) Mr. Spellman incorrectly contends that Congress explicitly preempted the States from recovering Medicaid except as authorized under section 1396p. Nowhere in the Medicaid Act does Congress expressly preempt State law. (See, e.g., Downhour v Somani, 85 F3d 261, 266 [6th Cir] [noting that Medicare contains no express preemption of State law], cert denied — US —, 117 S Ct 389 [1996].) Moreover, section 1396a (a) (25) specifically requires States to seek recovery of benefits from third parties. Accordingly, defendant’s claim of express preemption is without merit.
Implied Or "Field” Preemption
"[A] federal statute implicitly overrides state law * * * when the scope of a statute indicates that Congress intended federal *987 law to occupy a field exclusively”. (Freightliner Corp. v Myrick, 514 US 280, 287 [1995].) Such an intention may be found where the Federal regulatory scheme "is sufficiently comprehensive to make reasonable the inference that Congress 'left no room’ for supplementary state regulation.” (California Fed. Sav. & Loan Assn. v Guerra, 479 US 272, 281 [1987], quoting Rice v Santa Fe El. Corp., supra, 331 US, at 230.)
That Congress could not have intended the Federal Medicaid statutes to occupy the field of Medicaid law exclusively is readily apparent from the specific requirements in the Medicaid Act that States adopt complementary procedures in certain instances. (See, e.g, 42 USC §§ 1396a, 1396k.) Mr. Spell-man nevertheless asserts that section 1396p (b) is "so thorough and explicit that it is reasonable to infer that Congress left no room for supplementary state regulation, unless it is in complete conformity with the Medicaid Act.” However, section 1396p concerns recoupment of payments from the individual recipient; it is silent as to whether a State may look elsewhere. Contrary to defendant’s assertion, Congress did provide "leeway” by leaving substantial areas for State regulations with respect to recoupment of benefits. (See, 42 USC § 1396a [a] [25]; § 1396k.) Indeed, section 1396k affirmatively requires States to provide a mechanism for recovery of benefits. Therefore, Federal law does not implicitly preempt the State statutes.
Conflict Preemption
The last question is whether the State statutes are in actual conflict with Federal law or stand as an obstacle to the accomplishment of congressional objectives. Conflict preemption occurs when it is " 'impossible for a private party to comply with both state and federal requirements,’ * * * or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ” (Freight-liner Corp. v Myrick, supra, 514 US, at 287 [citation omitted], quoting Hines v Davidowitz, 312 US 52, 67 [1941]; California Fed. Sav. & Loan Assn. v Guerra, supra, 479 US, at 281.)
Here, the New York provisions do not conflict with the Medicaid Act. As indicated above, section 1396p of the Medicaid Act does not address recovery from a third party. Moreover, section 1396k requires that all State plans provide for assignment to the State of a recipient’s right of support, and cooperation with the State in identifying and pursuing any liable third party. An individual who refuses to so cooper *988 ate may be denied Medicaid benefits. (Douglas v Babcock, 990 F2d 875, 880 [6th Cir 1993] [upholding denial of prenatal benefits], cert denied sub nom. Douglas v Miller, 510 US 825 [1993].) Section 1396k (b) further assumes that States will, in fact, collect money pursuant to the required assignments and govern the allocation of collected funds. Last, contrary to defendant’s position, a plain reading of section 1396k reveals it is more than an eligibility provision; it provides a mechanism for recovery of benefits.
Perhaps recognizing the weakness of his argument, defendant argues in reply that section 1396r-5 expressly supersedes section 1396k. Section 1396r-5, entitled "Treatment of income and resources for certain institutionalized spouses”, is the recently enacted federal spousal allowance provision, which was also designed to combat the risk of spousal impoverishment. Section 1396r-5 (a) (1) provides that "[i]n determining the eligibility for medical assistance of an institutionalized spouse * * * the provisions of this section supersede any other provision of this title * * * which is inconsistent with them” (emphasis added). By its own terms, section 1396r-5 cannot supersede section 1396k. Section 1396r-5 concerns only eligibility for medical assistance, while section 1396k concerns assignment, enforcement and collection.[3]
Finally, defendant asserts that even if section 1396k could be deemed to create a right of recovery, the provision does not apply to a recipient’s spouse but only to unrelated providers, such as insurers in its reference to recovery from "any third party”. He compares the use of the words "any third party” in section 1396k with other statutes where Congress explicitly uses the terms "spouse” or "responsible relative”, and concludes that the absence of the words "spouse” or "responsible relative” in section 1396k demonstrates congressional intent to exclude them from the reach of the section. Defendant also refers to the State Social Services Law’s use of the term "third party” in an attempt to ascertain congressional intent.
Defendant ignores the definition of "third party” contained in the applicable Federal regulations. Section 1396k must be read in conjunction with section 1396a (a) (25) (A), which requires a State or local administering agency to "take all reasonable measures to ascertain the legal liability of third *989 parties (including health insurers, group health plans * * * service benefit plans, and health maintenance organizations) to pay for care and services available under the plan,” and to "seek reimbursement” from the "third party” under section 1396a (a) (25) (B). This definition does not exclude individuals. Moreover, in the corresponding regulations, the Department of Health and Human Services (HHS) explicitly defines "third party” as including "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan” (42 CFR 433.136 [emphasis added]). HHS is the Federal agency responsible for Medicaid. Its interpretation is entitled to due deference where, as here, congressional intent is unclear. (Pottgieser v Kizer, 906 F2d 1319, 1323 [9th Cir 1990].) In any event, even if the Congress did not contemplate that a spouse would be included in the definition of a third party under section 1396k, the Medicaid Act cannot be read to exclude Mr. Spellman from the reach of an action for reimbursement.[4]
Based on the foregoing, the provisions of New York’s Social Services Law which underlie the Department’s claims that defendant must reimburse the Department for past Medicaid benefits to his institutionalized spouse do not undermine any Federal objectives or purposes. (See, Freightliner Corp. v Myrick, 514 US 280, supra.) Rather, they reinforce the Federal objective that Medicaid is " 'intended to be the payer of last resort’ ” and that other available resources are to be utilized first. (See, New York State Dept. of Social Servs. v Bowen, 846 F2d 129, 133, quoting Sen Rep No. 146, 99th Cong, 2d Sess 1, 312, reprinted in 1986 US Code Cong & Admin News 42, 279.) These provisions do not conflict with section 1396p of the Medicaid Act. Indeed, in section 1396k, Congress evidences its intent that Medicaid recipients assist the State in recovering support from any third party, including a recipient’s spouse. Therefore, the State statutes are not preempted by Federal law.
Authority To Proceed Under State Law
Mr. Spellman separately argues that the Department has no authority under the Social Services Law to maintain this action. However, the Department may bring a future action *990 for recoupment against Mr. Spellman’s estate, since he had sufficient means during the period the medical assistance was rendered. (Matter of Craig, 82 NY2d 388, 393 [1993].) Moreover, it may bring a support proceeding under Social Services Law § 101 to compel defendant to make future monthly support payments. Indeed, both the State and local social services agencies have long claimed the authority to bring an enforcement action against a community spouse who has exercised the right of spousal refusal, and seek an order directing the community spouse to contribute toward the care of the institutionalized spouse.[5] (Brill v Wing, 937 F Supp 170, 177 [ND NY 1996] [consent decree entered into in 1985 contained provision allowing lawsuit against the spouse for contribution toward institutionalized spouse’s medical bills].)
Defendant relies on an apparent error in the complaint to argue that the Department is relying on Social Services Law § 369 which provides that recovery of benefits may only be had after his death.[6] However, even section 369 (2) (b) (ii) sets forth an exception to this general rule if the medical assistance was provided in accordance with section 366 (3), which, in this case, it was. The Department may proceed under section 366 (3) to recover from Mr. Spellman when he is shown to be capable of paying under section 366-c. It bears repeating that section 366-c is the State analog to 42 USC § 1396r-5 regarding eligibility. It is not a provision in isolation or one which supersedes section 366 (3) (a).
Mr. Spellman’s claim that the Department may not recover under section 366 (3) (a) because it does not have an implied contract with him under sections 101 and 104 is, as indicated above, belied by the express provision in section 366 (3) (a) that the Department had an implied contract with him. His final concession that the Department may sue him for prospective *991 support but not to recover past Medicaid payments ignores the plain reading of the law.
CONCLUSION
The New York provisions are consistent with the Federal Medicaid law. The statutes affirmatively contemplate inter-spousal transfers to enable the one needing costly care to qualify for public assistance without waiting until the resources of both are exhausted; and they are designed to shelter some funds for the benefit of the titled spouse without regard to the needs of the other. Recovery of amounts exceeding the statutory formula similarly seems to have been contemplated.
As this case demonstrates, the Department is becoming more aggressive in pursuing community spouses with excess assets under the statutory formula. While this apparent change of policy seems harsh, it is not unlawful.
Accordingly, defendant’s motion to dismiss, with costs, is denied.

. Section 1396a of the Medicaid Act sets forth the requirements for State plans under Medicaid, which New York generally complies with.

. Because no real estate is involved, Mr. Spellman cannot claim the "no eviction” benefit provided by section 1396p (b) (2).

. It is undisputed that Mrs. Spellman’s eligibility for Medicaid benefits will remain unaffected even if the Department is successful here.

. Under New York law, a spouse would be deemed a third party since "the spouse * * * of a recipient of public assistance or care * * * if of sufficient ability, [is] responsible for the support of such person”. (Social Services Law § 101 [1].)

. The only cases to the contrary denied recovery on the basis that the spouse was not of sufficient ability to support the Medicaid recipient at the time benefits were received but otherwise support the Department’s position. (See, Acevedo v Rojas, 230 AD2d 878 [2d Dept 1996]; see also, Matter of Craig, supra, 82 NY2d, at 392.)

. Specifically, he points to reference to section 369 in paragraph 14 of the complaint. This appears to be a typographical error. The text of paragraph 14 refers to sections 104 and 369 as allowing the Department, as a preferred creditor, to sue a person who was liable for the support of a recipient of Medicaid benefits. However, section 366 not section 369 contains this authority. Moreover, paragraph 13 of the complaint correctly refers to section 366 (3) (a), as does the first paragraph of the complaint, which specifically states that this action is brought under section 366.