[684 NYS2d 544]

CITY OF NEW YORK et al., Appellants, v STRINGFELLOW'S OF NEW YORK, LTD., et al., Respondents, et al., Defendants.

First Department, February 4, 1999

## APPEARANCES OF COUNSEL

*Margaret G. King* of counsel (*Barry P. Schwartz* and *Karen M. Griffin* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellants.

*Mark J. Alonso* of counsel (*Michael Braunstein* and *Jaymee Kahn* on the brief, attorneys), for respondents.

## OPINION OF THE COURT

ANDRIAS, J.

If Hollywood were writing the script or Variety the headline, the issue presented might possibly be characterized as "Ten's World Class Cabaret meets Disney World". Put another way, in a more legally oriented context, "Can an otherwise 'adult eating and drinking establishment' remove itself from restrictive zoning regulations by the simple expedient of admitting previously banned minors when accompanied by a parent or guardian?" The answer must be no.

As described by its president, defendant Stringfellow's of New York, Ltd. has, since 1991, operated an adult cabaret at 35 East 21st Street under the name Ten's World Class Cabaret, featuring among other things, topless entertainment by female entertainers.

In 1995, the New York City Zoning Resolution was amended to add various provisions, including section 12-10 (adult establishment), restricting the locations at which so-called "adult" establishments could be maintained or sited in the future. The constitutionality of such provisions has been upheld (*Stringfellow's of N. Y. v City of New York*, 171 Misc 2d 376, *affd* 241 AD2d 360, *affd* 91 NY2d 382; *see also, Hickerson v City of New York*, 997 F Supp 418, *affd* 146 F3d 99, *cert denied sub nom. Amsterdam Video v City of New York*, — US —, 142 L Ed 2d 658) and is not in issue, the Court of Appeals having held that the "enactment of the Amended Zoning Resolution was not an impermissible attempt to regulate the content of expression but rather was aimed at the negative secondary effects caused by adult uses, a legitimate governmental purpose" (*Stringfellow's of N. Y. v City of New York, supra,* 91

NY2d at 399 [citation omitted]). However, the applicability of section 12-10 of the Zoning Resolution is.

That section provides, in pertinent part:

"An 'adult establishment' is a commercial establishment where a 'substantial portion' of the establishment includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof, as defined below * * *

"(b) An adult eating and drinking establishment is an eating or drinking establishment which regularly features any one or more of the following:

"(1) live performances which are characterized by an emphasis on 'specified anatomical areas' or 'specified sexual activities'; or

"(2) films, motion pictures, video cassettes, slides or other visual reproductions which are characterized by an emphasis upon the depiction or description of 'specified sexual activities' or 'specified anatomical areas'; or

"(3) employees who, as part of their employment, regularly expose to patrons 'specified anatomical areas'; and

"which is not customarily open to the general public during such features because it excludes minors by reason of age."

Sections 32-01 and 42-01 of the Zoning Resolution, in addition to the applicable regulations regarding permitted uses, further limit the location of adult establishments in certain zoning districts. Section 52-77 governs the termination of nonconforming adult establishments in all zoning districts.

During the pendency of the various constitutional challenges to the amendments to the Zoning Resolution, enforcement of such provisions was stayed until July 28, 1998, when the United States Supreme Court denied a further stay (*Amsterdam Video v City of New York*, — US —, 119 S Ct 4).

By summons and complaint dated July 22, 1998, Stringfellow's sought a declaratory judgment declaring that it is not an "adult eating or drinking establishment" within the meaning of Amended Zoning Resolution § 12-10 (adult establishment) (b) because it does not "regularly feature * * * employees who, as part of their employment, regularly expose to patrons 'specified anatomical areas'" and because it does not exclude minors by reason of their age. Thereafter, because of the lack of a stay of enforcement and fear that the City would seek an ex parte order closing its business, Stringfellow's sought to enjoin the City from moving for such relief and the City cross-moved to

dismiss the complaint on the ground that Stringfellow's lacked standing and that the issue was not ripe for adjudication, which cross motions were argued before the IAS Court on September 25, 1998, at which time the court stated that it would notify Stringfellow's of any ex parte applications by the City. The cross motions were then marked submitted with a decision promised in mid-October.

While such cross motions were still *sub judice*, the City, by summons and verified complaint dated October 13, 1998, commenced the present action seeking, *inter alia*, to permanently enjoin Stringfellow's, pursuant to sections 7-706 and 7-714 of the Administrative Code of the City of New York, from further conducting or maintaining a public nuisance at the premises; and, permanently enjoining Stringfellow's from operating or allowing the operation of the subject premises as an adult establishment in violation of section 42-01 (b) of the Zoning Resolution.

By order to show cause, dated October 14, 1998, the City moved for a preliminary injunction closing Ten's because it was being operated in violation of section 12-10 of the Zoning Resolution, whereupon defendant served its verified answer and cross-moved to, *inter alia*, preliminarily enjoin plaintiffs from taking any action to close Ten's; toll the time in which it may cure any defect in its business; and, consolidate this action with the prior action commenced by Stringfellow's.

Thereafter, in a decision dated October 22, 1998, the court granted the City's cross motion to dismiss Stringfellow's declaratory judgment action on the ground that it was superfluous and that the City's present lawsuit is an adequate vehicle by which to determine all of the rights and liabilities of the parties. On October 27, 1998, defendant moved for summary judgment, *inter alia*, dismissing the complaint, and the City cross-moved for summary judgment in its favor on the grounds that there is no triable issue of fact that Ten's is an adult drinking and eating establishment as defined by section 12-10 of the Zoning Resolution and is operating within a prohibited zoning district.

In a decision dated November 4, 1998, the IAS Court denied the parties' cross motions for summary judgment, finding that questions of fact existed as to whether Ten's did in fact exclude minors on account of age because, on the one hand, Ten's had demonstrated that it had instituted a comprehensive policy to admit minors with certain restrictions, while on the other, four City inspectors averred that Ten's had at least one sign in its

premises stating that minors will not be admitted. In so ruling, the court found that "defendants do not dispute that Ten's is covered by the definition of 'an adult eating and drinking establishment' ", but argue that the Zoning Resolution does not apply to Ten's because it does not exclude minors on account of their age. As found by the court, "Ten's has a policy to admit minors subject to certain restrictions mandated by the Penal Law and other state laws", which policy was instituted in mid-1997 merely to avoid application of the Zoning Resolution.

In interpreting section 12-10, the IAS Court found that it clearly and unambiguously applies only to businesses otherwise qualifying as adult establishments where such businesses are not customarily open to the general public because they exclude minors by reason of age at times during which certain sexually oriented activities are featured. Therefore, the court held, under the plain language of section 12-10, Ten's cannot be defined as an adult eating and drinking establishment if it does not exclude minors on account of age. The court also found unpersuasive the City's argument that Ten's admission policy amounts to a de facto exclusion policy inasmuch as the several steps required before a minor will be admitted seem designed to ensure that admission of the minor does not violate any relevant sections of the Penal Law or any statutes governing alcohol and tobacco products. It further found that the City had not set forth any evidence that Ten's admission policy violates any such statutes. As to the City's argument that the exclusion of minors provision was not intended to apply to businesses such as Ten's as opposed to "legitimate theatrical performances and films including nudity or having a sexual theme", the court held that, given that section 12-10 is unambiguous on its face, it would be inappropriate and inadvisable for the court to look behind it to apply the Zoning Resolution to Ten's.

Finally, the court opined that the City cannot argue that the courts should ignore this part of the Zoning Resolution because it removes certain businesses from its reach, stating: "If the ZR as drafted does not attain all of its supposed goals, then it should be revised within constitutional parameters. Such a revision is not within the power of this court in light of the clear language of the ZR."

The next day, November 5, 1998, the IAS Court heard oral argument on the City's motion for a preliminary injunction. During the course of the proceedings, Stringfellow's withdrew its cross motion seeking, *inter alia*, to preliminarily enjoin the

City from taking any action to close Ten's; to toll its time to cure any defects in its business; and, to consolidate this action with its prior declaratory judgment action. Counsel for Stringfellow's then stipulated that, if found to be an adult establishment, Ten's is in a location that is prohibited for adult establishments under the Amended Zoning Resolution. Counsel for the parties further stipulated that since October 14, 1998, the date of the order to show cause obtained by the City, there is no evidence of a sign on Ten's premises restricting admission to persons 21 years of age or older.

Thereupon, the court rendered its decision on the record denying the City's motion for a preliminary injunction. The court found that, based on the stipulations entered into by the parties, the City had failed to meet its burden of proving by clear and convincing evidence its right to a preliminary injunction closing Ten's. The court further found that Ten's does not close itself to the general public by excluding minors by reason of age, in light of its written admission policy that admits minors under certain conditions intended to avoid offending the Penal Law, pursuant to which, as the court noted, endangering the welfare of a child is still a crime. The court also granted defendant's renewed motion for summary judgment and dismissed the City's complaint, with defendant withdrawing its motion for sanctions and the first three of its four counterclaims without prejudice, leaving its fourth counterclaim for abuse of process. The court concluded that Ten's is not an adult eating or drinking establishment as defined by section 12-10 (adult establishment) (b) of the Amended Zoning Resolution, finding that it is not, as described in that section, "an establishment which is not customarily open to the general public during such features because it excludes minors by reason of age."

We disagree and accordingly reverse and grant the City's cross motions to the extent of granting it a preliminary injunction and partial summary judgment on the issue of whether Ten's is an adult eating or drinking establishment as defined by section 12-10 (adult establishment) (b) of the Amended Zoning Resolution.

While zoning ordinances must be narrowly interpreted and ambiguities are to be construed against the zoning authority (*Toys "R" Us v Silva*, 229 AD2d 308, *revd on other grounds* 89 NY2d 411), the fundamental rule in construing any statute, or in this case an amendment to the City's Zoning Resolution, is to ascertain and give effect to the intention of the legislative

body, here the New York City Council. The intent of the City Council is controlling and, subject to constitutional or other legal limitations, must be given force and effect. Such intent is ascertained from the words and language used in the statute and if the language thereof is unambiguous and the words plain and clear, there is no occasion to resort to other means of interpretation. Only when words of the statute are ambiguous or obscure may courts go outside the statute in an endeavor to ascertain their true meaning. The legislative intent is to be ascertained from the words and language used and the statutory language is generally interpreted according to its natural and obvious sense, without resorting to an artificial or forced construction (*see generally*, McKinney's Cons Laws of NY, Book 1, Statutes §§ 92, 94, 96). "[A] court in construing a law will sometimes be guided more by its purpose than its phraseology". (*Id.*, § 96, at 208-909.)

Here, there is no question that the intent of the City Council was to prohibit adult eating or drinking establishments such as Ten's from operating in certain locations or zoning districts in New York City. Stringfellow's having stipulated that it is in such a location, i.e., in an M1-5M Zoning District within 500 feet of a church and an R9A Zoning District, the only remaining issue is whether it falls within the definition of adult eating or drinking establishment contained in section 12-10 (adult establishment) (b).

The operative words for purposes of any analysis of section 12-10 (adult establishment) (b) are "regularly" (as in "regularly features" live performances characterized by an emphasis on " 'specified anatomical areas' " or "regularly features" employees who, as part of their employment, regularly expose to patrons " 'specified anatomical areas' ", later defined as, *inter alia*, "female breast below a point immediately above the top of the areola") and "customarily" (as in "an adult eating and drinking establishment" regularly featuring such activities "which is not customarily open to the general public during such features because it excludes minors by reason of age").

Regularly is generally defined as customarily, usually or normally, but other definitions include: occurring at fixed intervals, i.e., periodic; or, constant, i.e., not varying. (American Heritage Dictionary, Second College Edition [1982].) The fact that Ten's "regularly" features topless and so-called table or lap dancing is established in the record by the affidavits of City inspectors who visited Ten's on at least 10 occasions from August 3, 1998 to October 7, 1998 and observed such perfor-

mances. In addition to those virtually uncontested observations, Stringfellow's, in affidavits and affirmations by its president and counsel, admits that Ten's features female entertainers who perform topless dances for its patrons, and, for a fee paid by the customer, perform so-called "table dances" in a disrobed fashion, but denies that the entertainers perform "lap dances" and protests that the dancers wear so-called "T-backs" as opposed to the "G-string" described by one inspector. Other inspectors described various dancers as wearing a "thong bikini bottom", "string bikini bottoms" or "hot pants", but all were unanimous in stating that the women were topless and, in addition to the dances performed on stage, various inspectors described lap dances which were offered and performed in a second level seating area or separate cubicles for an additional $20 and such dances entailed the dancers gyrating their hips in close proximity to the male patrons' genital areas and shaking their breasts in close proximity to their faces. The women also were observed touching their breasts and buttocks as they performed on stage and gave lap dances while placing themselves between the male patrons' legs. Thus, there can be no question that the described activities are regularly featured at Ten's.

We next turn to the term customarily, as in "not customarily open to the general public". As the City aptly points out, the term "customarily" is often encountered in the language of zoning statutes, most frequently in sections referring to home occupations or accessory uses that are incidental to a principal use (*see, e.g., Matter of New York Botanical Garden v Board of Stds. & Appeals*, 91 NY2d 413, 419-420). As held in *Matter of Teachers Ins. & Annuity Assn. v City of New York* (82 NY2d 35), a case involving the landmarking of the Four Seasons restaurant, the meaning of customary public openness is a legal question for the courts rather than one of administrative expertise and "*customary* openness, accessibility, invitation to the public [are] words that are readily understood to require usual, ordinary or habitual (rather than rare or occasional) availability to the general public". (*Supra*, at 43 [emphasis in original].)

The City and respondent differ on whether "customarily" as used in section 12-10 means the practice of Ten's as opposed to the practice of the entire topless bar "industry". The City urges that the section 12-10 definition of "adult eating or drinking establishment" refers to the type of establishment and the term "customarily" logically and necessarily refers to general,

not individual, practice, while respondent contends that the fact that such definition uses the singular form throughout is proof positive that the term "customarily" means only the establishment in question and, that if the City Council meant what the City suggests, it would have included the phrase "and which is not *of the type* customarily open to the general public" (respondent's emphasis).

Respondent's argument that its individual practice of admitting minors somehow takes it out of the scope of the Amended Zoning Resolution is belied by the specific rules of construction of language which apply to the text of the Zoning Resolution and are set forth in article 1 (ch 2) of the Zoning Resolution. Section 12-01 (d) specifically provides that "words used in the singular number shall include the plural, and the plural the singular, unless the context clearly indicates the contrary." Such rule comports with General Construction Law § 35 (*see also*, McKinney's Cons Laws of NY, Book 1, Statutes § 252). As a result, it is unnecessary to add additional language to make it clear that the language of section 12-10 reflects that the City Council intended the term "customarily" to apply to "adult eating or drinking establishment[s]" in general as opposed to any particular establishment. Thus, any argument that the isolated practice of an individual adult establishment somehow changes the broader industry custom and practice of excluding minors is legally flawed and defies logic and common sense.

In addition, a statute generally speaks, not from the time when it was actually enacted or when the courts are called upon to interpret it, but as of the time it took effect. In other words, it is to be interpreted as the courts would have if it had come into question soon after its passage (McKinney's Cons Laws of NY, Book 1, Statutes § 93; *Matter of Spencer v Board of Educ.*, 39 AD2d 399, 402, *affd on opn at App Div* 31 NY2d 810). The amendments in issue took effect on October 25, 1995, although enforcement of such provisions was judicially stayed until July 28, 1998, and it is not contended, nor could it be, that, prior to October 25, 1995 or shortly thereafter, adult eating and drinking establishments, as defined by the City Council, admitted minors to their premises with or without an admission charge, with or without parental consent or the consent of the minor, or accompanied or unaccompanied by parents or guardians.

Indeed, Stringfellow's does not question the IAS Court's finding that its "policy to admit minors was instituted in mid-1997 subject to certain restrictions mandated by the Penal Law and

other state laws" merely to avoid application of the Amended Zoning Resolution and there is nothing in the record or otherwise that indicates that the adult entertainment industry's customary practice of excluding minors has changed in any respect. Moreover, without characterizing or passing on the moral content of the entertainment presented by Ten's, which is unnecessary to do in this case, we note that any attempt to avoid the impact of the Penal Law, to the extent it criminalizes endangering the welfare of a child under 17 years old (Penal Law § 260.10) or disseminating indecent material to minors by admitting them to such performances with an admission charge (*see*, Penal Law § 235.21 [2]) would be ineffective as being against public policy, as expressed by the Legislature in those statutes.

Ten's attempt to avoid both the restrictions of the Zoning Resolution as well as any potential criminal liability is embodied in its "Door Policies for Minors". Such policy provides that customers under the age of 18 may enter the club only if accompanied by a parent/guardian and that both the parent/guardian and the minor must sign sworn statements, after a guided tour of the premises, unaccompanied by the minor, in which the parent/guardian accepts full responsibility for allowing the minor to enter Ten's and warrants that the topless entertainment and/or nudity as presented by Ten's is not harmful to or will not have any negative effect on the minor. The minor, who in the only documented case on the record was a 13-year-old boy from Caracas, Venezuela who visited Ten's with his father on October 11, 1998, is required to swear that he or she will not drink or order alcohol or use tobacco products while in Ten's. He or she is also required to swear that he or she understands that Ten's provides topless dancing by females and that this type of entertainment is not harmful or offensive to him or her in any way and that he or she has or has not, as the case may be, personally observed bare female breasts in various described circumstances including, *inter alia*, movies, cable television, National Geographic, Broadway theater, other magazines, personal experience, etc. Finally, the minor must swear that he or she has not and/or will not be harmed by seeing exposed female breasts. The policy also provides that minors are not to be required to pay the club's cover charge and "should not get dances".

With due respect to counsel who has attempted to bring his client into compliance with the Zoning Resolution by promulgating this policy, the required "consents" are meaningless and

without legal effect. An infant is defined by statute in New York as a person under the age of 18 years (Domestic Relations Law § 2). Infancy, since common-law times and most likely long before, is a legal disability and an infant, in the absence of evidence to the contrary, is universally considered to be lacking in judgment, since his or her normal condition is that of incompetency. In addition, an infant is deemed to lack the adult's knowledge of the probable consequences of his or her acts or omissions and the capacity to make effective use of such knowledge as he or she has. It is the policy of the law to look after the interests of infants, who are considered incapable of looking after their own affairs, to protect them from their own folly and improvidence, and to prevent adults from taking advantage of them (66 NY Jur 2d, Infants and Other Persons Under Legal Disability, § 2).

That is why there are child labor laws and prohibitions against smoking, drinking and driving before a certain age. That is also why it is generally required for children under the age of 18 to obtain parental consent to participate in beneficial extracurricular activities such as sports, school trips, etc. As for requiring the minor to sign a consent or waiver before being admitted to Ten's, such release or waiver is of no effect since it is conclusively presumed that infants do not have the mental capacity and discretion to protect themselves from the artful designs of adults. (*Id.*, § 15.)

Stringfellow's argues that, if a minor and his or her parent signs a statement that the entertainment (which the parent has reviewed in advance) is not harmful to the minor, it is difficult for the government to contend that such entertainment is harmful, much less hold Ten's responsible for the parent's misapprehension of the minor's maturity level. If a parent feels it is appropriate for his or her child to visit Ten's, it is urged, it is hardly the province of the City to step in and insist that such behavior endangers the child's "moral welfare". It is unnecessary for us to decide whether the entertainment or other activities presented by Ten's constitutes endangering the welfare of a minor because the parental and minor consents could not insulate Ten's or, for that matter the parent, from any potential criminal liability.

Thus, regardless of whether in one isolated instance Ten's has admitted a 13-year-old boy with the approval of his father, the evidence of which is questionable, it cannot be said that Ten's "customarily" admits minors as that term is ordinarily understood. Ten's status as an adult establishment is defined

by the nature of its entertainment which admittedly is intended for an adult clientele. That the same entertainment may also be attractive to minors with or without parental approval, does not change the essential nature of the establishment or remove it from the ambit of the Amended Zoning Resolution.

As to Stringfellow's argument, that, in any event, summary judgment in favor of the City is unwarranted because of its affirmative defense that the Alcoholic Beverage Control Law preempts the Amended Zoning Resolution with respect to liquor-licensed establishments, as well as "the plethora of material issues" which must be addressed before the City can obtain judgment, we note that Stringfellow's failed to raise the preemption issue when it had the opportunity to do so in its constitutional challenge to the Amended Zoning Resolution (it was raised by one of the *amici curiae* [*see, Stringfellow's of N. Y. v City of New York, supra*, 91 NY2d, at 389] to no avail) and it does not indicate in any way how the Amended Zoning Resolution directly or incidentally affects the sale or the consumption of alcohol as was the case in *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs* (74 NY2d 761). Moreover, although the Alcoholic Beverage Control Law is preemptive of local law in the regulation of the manufacture, sale and distribution of alcoholic beverages, the Court of Appeals has noted that "establishments selling alcoholic beverages are not exempt from local laws of general application", in this case the Amended Zoning Resolution (*supra,* at 763; *see also, People v De Jesus*, 54 NY2d 465).

Nevertheless, despite the fact that Stringfellow's has already stipulated that, if found to be an adult establishment, Ten's is in a prohibited location and it does not specify further what the plethora of factual issues presented are, there are unresolved issues regarding notice and abatement of a public nuisance in the context of section 7-707 of the Administrative Code, which governs the procedure to be followed where a preliminary injunction has been granted (*see, City of New York v Basil Co.*, 182 AD2d 307).

Accordingly, the order of the Supreme Court, New York County (Stephen Crane, J.), entered November 6, 1998, which, *inter alia*, denied plaintiffs-appellants' motion for a preliminary injunction and granted defendants-respondents' renewed motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, plaintiffs' motion for a preliminary injunction granted, defendants' renewed motion for summary judgment denied and the City's cross motion

for summary judgment granted to the extent of awarding the City partial summary judgment on the issue of whether defendant-respondent Stringfellow's falls within the definition of adult eating or drinking establishment contained in section 12-10 (adult establishment) (b) of the City's Zoning Resolution and remanding the matter for further proceedings, in accordance with the provisions of section 7-707 of the Administrative Code, to determine when defendant was or will be on actual or constructive notice of the subject public nuisance and whether it has acted or will act to abate same within a reasonable time, and for further proceedings consistent with said determination.

SULLIVAN, J. P., NARDELLI and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered November 6, 1998, reversed, on the law, without costs, plaintiffs' motion for a preliminary injunction granted, defendants' renewed motion for summary judgment denied and the City's cross motion for summary granted to the extent of awarding the City partial summary judgment on the issue of whether defendant-respondent Stringfellow's falls within the definition of adult eating or drinking establishment contained in section 12-10 (adult establishment) (b) of the City's Zoning Resolution and the matter remanded for further proceedings.