OPINION OF THE COURT
Robert M. Mandelbaum, J.
When an adult defendant enters into a sexual relationship with an underage teenager in Virginia, travels with the minor across state lines as she runs away from home, and thereafter suffers the child to sleep in squalor in a New York City bus terminal, has the defendant committed a cognizable crime in New York?
Charged by information with endangering the welfare of a child, defendant moves to dismiss the accusatory instrument on two grounds — facial insufficiency and want of geographical jurisdiction. This court previously rendered an oral decision denying defendant’s motion in both respects; this opinion serves to explain the basis for the court’s prior ruling.
The information alleges that on August 12, 2007, 16-year-old Felicia F. “r[a]n away from [her mother’s] home in Fairfax County, Virginia, with defendant.”[1] Two days later, a police officer found Felicia “sleeping inside the Port Authority Bus Terminal wearing ripped pants.” The officer, who observed that Felicia had “dirty hair, dirty feet, and a strong body odor,” saw defendant “approach” Felicia inside the bus terminal. Defendant, who is 23 years old, admitted to the officer, “Felicia is my girlfriend. She’s sixteen. We came here from Virginia. We came *717 here to see my family. We ran away together. We had sex twice at her mother’s house.”[2]
In order to be sufficient on its face, an information must provide reasonable cause to believe that the defendant has committed the offense charged[3] and contain nonhearsay allegations that, if true, establish every element of the offense and its commission by the defendant (see CPL 100.40 [1] [b], [c]). In other words, the information must contain factual allegations that would, if true, make out a prima facie, or legally sufficient, case (see People v Alejandro, 70 NY2d 133, 137, 139 [1987]; see also CPL 70.10 [1] [“ (Legally sufficient evidence” defined as “competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’]).
In assessing whether evidence is legally sufficient to establish guilt of a charged crime, a court must determine “whether the evidence, viewed in the light most favorable to the People, could lead a rational trier of fact to conclude that the elements of the crime ha[ve] been proven beyond a reasonable doubt” (People v Cabey, 85 NY2d 417, 420 [1995] [citations omitted]). In making that assessment, the court “must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person” to that conclusion (People v Bleakley, 69 NY2d 490, 495 [1987]). Thus, in analyzing the facial sufficiency of an information, the court must consider whether both the alleged facts and the reasonable inferences to be drawn from those facts, viewed in the light most favorable to the People, would, if true, establish every element of the crime charged. And of course, “[s]o long as the factual allegations of *718 an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2000] [citations omitted]).
Judged by these standards, the information is facially sufficient.
A person is guilty of endangering the welfare of a child when he “knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old” (Penal Law § 260.10 [1]). “Actual harm to the child need not result for criminal liability” (People v Johnson, 95 NY2d 368, 371 [2000]). Rather, it is “sufficient that the defendant act in a manner which is likely to result in harm to the child, knowing of the likelihood of such harm coming to the child” (People v Simmons, 92 NY2d 829, 830 [1998] [citation omitted]).[4] Thus, endangering the welfare of a child is defined “by conduct which a defendant knows will present a ‘likelihood’ of harm to a child (i.e., with an awareness of the potential for harm)” (Johnson, 95 NY2d at 372). “In short, ‘a defendant must simply be aware that the conduct may likely result in harm to a child’ ” (People v Hitchcock, 98 NY2d 586, 591 [2002], quoting Johnson, 95 NY2d at 372).
Defendant asserts that the “only allegations” in support of the charge against him are that Felicia “had dirty hair and feet and had strong body odor.” Noting the absence of any allegation either that defendant “forced or coerced [Felicia] into coming to New York or to stay with him in New York,” or that defendant “forced or caused [her] to be dirty,” defendant contends that the information is insufficient on its face. But defendant’s incomplete recitation of the facts ignores not only the remainder of the allegations, but also, more importantly, their context (cf. People v Tichenor, 89 NY2d 769, 776 [1997] [proper assessment of the sufficiency of evidence of disorderly conduct requires that the allegations be analyzed in the context of “the whole incident — all the connected frames”]).
Endangering the welfare of a child may be characterized as a continuing offense over a period of time (see Simmons, 92 NY2d at 831; People v Keindl, 68 NY2d 410, 421 [1986]), “made up of *719 a continuity of acts or of omissions, neither of which may be enough by itself, but each of which comes in with all the rest to do the harm and make the offense” (Cowley v People, 83 NY 464, 472 [1881]). Here, defendant is alleged to have had sex with an underage teenager, abetted her in running away from her legal guardian, and brought her to a strange city where they apparently had no safe lodging. These actions, individually and collectively, were plainly likely to cause the child harm.
That defendant may not have coerced the minor child into running away with him is of no moment. A “minor,” or “infant,” is defined by statute as a person under the age of 18 years (see CPLR 105 [j]; Domestic Relations Law § 2), and “[fit is the policy of the law to look after the interests of infants, who are considered incapable of looking after their own affairs, to protect them from their own folly and improvidence, and to prevent adults from taking advantage of them” (City of New York v Stringfellow’s of N.Y., 253 AD2d 110, 120 [1st Dept 1999]). It is, moreover, the public policy of New York to discourage runaways and to return them to their parents (see Family Ct Act § 712 [a] [person in need of supervision]; § 718 [return of runaway]). Thus, although at the pleading stage it may not be clear whether this 23-year-old defendant lured, or enticed, or encouraged, or simply enabled Felicia to run away from her mother’s home (cf. People v Henderson, 92 NY2d 677, 680-681 [1999] [in assault case, full extent of physical injury may not be known at pleading stage; information held facially sufficient]), his conduct was equally likely to be injurious to Felicia’s welfare, regardless of the degree of sway exercised by him. After all, “it is conclusively presumed that infants do not have the mental capacity and discretion to protect themselves from the artful designs of adults” (Stringfellow’s, 253 AD2d at 120).
Similarly, it is irrelevant that defendant may not have forced Felicia to engage in sexual relations with him. Even without forcible compulsion, it would be a crime in New York for defendant to have sex with a 16 year old {see Penal Law § 130.25 [2]), who as a matter of law is deemed incapable of consent (see Penal Law § 130.05 [3] [a]).[5] Accordingly, defendant’s commission of what would in this state constitute rape in the third degree may be presumed likely to have injured his victim at least mentally and morally, and perhaps physically as well.
*720 Defendant contends that because he had sex with Felicia in-Virginia, and because they ran away from that state, New York lacks territorial jurisdiction over this case. But again, defendant errs in reciting the facts so selectively. For in properly assessing allegations of the “continuing offense” of endangering the welfare of a child (Simmons, 92 NY2d at 831; Keindl, 68 NY2d at 421), the court must look to the “confluence of events and circumstances” (Hitchcock, 98 NY2d at 592), including both the defendant’s acts and his omissions (see Cowley, 83 NY at 472; cf. People v Wong, 81 NY2d 600 [1993] [endangering the welfare of a child may be premised on a failure to seek medical care]).
A person may be convicted in New York of an offense defined by the laws of this state when “[c]onduct occurred within this state sufficient to establish . . . [a]n element of such offense” (CPL 20.20 [1] [a]). Although some of defendant’s conduct creating a likelihood of injury to Felicia occurred, or began, in Virginia, his potentially harmful actions continued upon their arrival in New York. Most obviously, he continued to abet her running away from home as and after they crossed state lines. And her running away, of course, was likely to endanger her physically, mentally, and morally, inasmuch as it severed her from the guardian legally charged with her welfare, as well as from education undoubtedly beneficial to her future.[6]
Moreover, it may be reasonably inferred from the officer’s observations in the bus terminal that after their arrival in this state, defendant persisted in acting as the child’s companion (and likely paramour), and as an accomplice in her failing (indeed, failed) attempt to live as a runaway. By so doing, he subjected her to sustained vulnerability to, and damaging interaction with, the very adult who had taken advantage of her sexually and who at the least shared responsibility for her deleterious and enduring choice to live a life estranged from her parent, with no adequate support, and dependent on the man who had enabled, if not solicited, this destructive course. Further, in bringing the child to New York, defendant set himself up as her sole protector and source of adult example, instruction, and guidance. That he was not equipped to protect, instruct, or guide her — as evidenced by her physical condition and apparent homelessness when found — exacerbated the likelihood that she would be harmed, as, indeed, she plainly was (cf. *721 Family Ct Act § 1012 [f] [i] [A] [“Neglected child” means “a child less than eighteen years of age . . . whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care ... in supplying the child with adequate food, clothing, shelter or education”]).
Thus, by playing an accessorial role in Felicia’s continued flight after her arrival in New York, and by refraining from seeking aid for her here by contacting her guardian, the police, or child welfare authorities, notwithstanding the obvious squalor into which she had fallen, defendant acted, and failed to act, in such a way as to maintain and perpetuate the likelihood that she would suffer further harm. The obviousness of that risk readily permits the inference that he was aware, as required by the statute, that his conduct in this jurisdiction was likely to cause such harm. Indeed, that the child was discovered in a state of notable filth demonstrates that defendant’s actions were more than merely potentially harmful to Felicia’s welfare— they caused her to suffer actual injury.
Accordingly, defendant’s motion to dismiss must be denied.

. This particular allegation is based on the complaint of the mother herself, who personally observed Felicia run away from home with defendant.

. “A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed” (CPL 60.50). This statutory requirement of corroboration, however, “does not mandate submission of independent evidence of every component of the crime charged, but instead calls for some proof, of whatever weight, that a crime was committed by someone” (People v Chico, 90 NY2d 585, 589 [1997] [citations omitted]). Here, defendant’s statements are sufficiently corroborated by allegations that he and the child ran away together and that the girl was discovered in New York, in a wretched state, in the company of defendant.

. Reasonable cause to believe that a person has committed an offense “exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it” (CPL 70.10 [2]).

. “A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists” (Penal Law § 15.05 [2]).

. It is also a crime in Virginia for “[a]ny person 18 years of age or older . . . [to] engage[ ] in consensual sexual intercourse with a child 15 or older not his spouse” (Va Code Ann § 18.2-371 [ii]). A “child” is defined as “a person less than 18 years of age” (Va Code Ann § 1-207).

. Virginia compels school attendance until the age of 18 (see Va Code Ann § 22.1-254 [A]).