OPINION OF THE COURT
Louis C. Palella, J.
Dianne DaRonco, the court-appointed conservator of her husband, Joseph L. DaRonco, has petitioned (1) to convert the conservatorship of her husband to a guardianship of the person and property pursuant to Mental Hygiene Law article 81; (2) to empower her, as guardian, to continue his history of consistent financial support to his wife and his son; and (3) to authorize her to transfer his assets to her as his wife (a) consistent with appropriate estate planning for Medicaid qualification and (b) in furtherance of, and to ensure, his estate plan.
A hearing on this petition was held before the court at which the presence of Joseph L. DaRonco Was and waived at which time various relief was granted. There was no opposition to any aspect of the petition. The Court Evaluator, Jeffrey S. Shumejda, Esq., in his report dated November 3, 1995, supports the granting of the requested relief.
The court reserved decision, however, on that branch of the petition which sought authorization to transfer assets to the conservator (guardian) wife, etc.
Joseph L. DaRonco is a 56-year-old man, the husband of Dianne DaRonco and the father of their one child, Joseph L. Da-Ronco, II, who is now 15 years old. Mr. DaRonco suffers from irreversible brain damage following complications during surgery to remove an acoustic neuroma. He suffers from spastic paralysis and severe physical and cognitive impairment. There is little or no hope for improvement in his condition.
Mr. DaRonco now resides in the Skyview Nursing Home, Croton-on-Hudson, New York, after transfer on January 31, 1994 from the Head Injury Recovery Center at Hillcrest, Milford, Pennsylvania, where he had been admitted as an inpatient on August 31, 1992. The daily costs of his care are $246.50, which does not include his additional medical costs. These costs are presently paid from funds in the conservator-ship (guardianship). Before suffering his disability, Mr. Da- *142 Ronco was the principal wage earner and source of support of his family, and the family lived in their own home at 2431 Mohansic Avenue, Yorktown Heights, New York, where Mrs. Da-Ronco and their son still reside.
The estate of Mr. DaRonco at the time he incurred his disability was substantial, as is set forth in the accountings which have been filed. However, Mr. DaRonco’s monthly income totals $1,897, while the cost of nursing home care alone averages $7,395.50 per month. At this rate, the estate will be depleted in less than seven years. Then, not only will Mr. Da-Ronco be indigent and supported by Medicaid, but Mrs. Da-Ronco, who devotes herself to the care of her husband and son, will, along with her son, be destitute as well.
To avoid this economic ruin, Mrs. DaRonco seeks to receive authorization as guardian pursuant to article 81 of the Mental Hygiene Law, as well as New York case law, to transfer or gift Mr. DaRonco’s assets to herself as his spouse. Whereupon, she shall exercise her right of spousal refusal to make those assets available for Mr. DaRonco’s support. This will result in Mr. DaRonco’s immediate qualification for Medicaid.
This procedure was explained in the decision of Justice Leone in Matter of Parnes (NYLJ, Nov. 2, 1994, at 32, col 2 [Sup Ct, Kings County]):
"Walter Parnés also seeks such transfer in order for his wife’s nursing home costs to be covered by Medicaid. Such an inter-spousal transfer would not result in any Medicaid penalty period, i.e., a period of time which an individual would be forced to wait (depending on the amount transferred) before becoming eligible for Medicaid nursing facility services (see, Social Services Law § 366 [5] [d] [3] [ii] [A]). Walter Parnés, however, has assets exceeding the maximum community spouse resource allowance, which currently is $76,660 (see, 94-ADM 1 [Feb 1994]). Social Services Law § 366-c (5), in pertinent part, provides:
" '[I]n determining the resources of the institutionalized spouse and the community spouse in establishing eligibility for medical assistance:
" '(a) All resources * * * held by either the institutionalized spouse or the community spouse or both shall be considered available to the institutionalized spouse to the extent that the value of the resources exceeds the community spouse resource allowance’ (see also, 18 NYCRR 360-4.10 [c] [2]).
"Notwithstanding this provision, an institutionalized spouse is not rendered ineligible for Medicaid by reason of the com *143 munity spouse having resources in excess of the community spouse resource allowance if the community spouse exercises his or her right of spousal refusal. The right of spousal refusal is a well established doctrine in Federal and New York State law. Such doctrine was codified in the Federal Medicaid statute, 42 USC § 1396r-5 (c) (3), and, in New York State, in Social Services law § 366-c (5) (b), which provides:
" 'An institutionalized spouse shall not be ineligible for medical assistance by reason of excess resources determined under paragraph (a) of this subdivision, if the institutionalized spouse executes an assignment of support from the community spouse in favor of the social services district and the department or the institutionalized spouse is unable to execute such assignment due to physical or mental impairment or to deny assistance would create an undue hardship, as defined by the commissioner.’
"The doctrine of spousal refusal is further embodied in New York law by Social Services Law § 366 (3) (a), which provides:
" 'Medical assistance shall be furnished to applicants in cases where, although such applicant has a responsible relative with sufficient income and resources to provide medical assistance as determined by the regulations of the department, the income and resources of the responsible relative are not available to such applicant because of the absence of such relative or the refusal or failure of such relative to provide the necessary care and assistance. In such cases, however, the furnishing of such assistance shall create an implied contract with such relative, and the cost thereof may be recovered from such relative in accordance with title six of article three and other applicable provisions of law.’
"Thus, pursuant to the doctrine of spousal refusal, if a community spouse who has resources in excess of the community spouse resource allowance, fails or refuses to relinquish such resources to pay the nursing home, Medicaid must still be provided to the institutionalized spouse so long as the government has the option of suing the community spouse for support (see, 42 USC § 1396r-5 [c] [3]; Social Services Law §§ 366 [3] [a], 366-c [5] [b]).”
Section 81.21 (d) of the Mental Hygiene Law provides that the court, in considering an application to transfer the funds of an incapacitated person, must consider the following:
"1. whether the incapacitated person has sufficient capacity to make the proposed disposition himself or herself, and, if so, whether he or she has consented to the proposed disposition;
*144 "2. whether the disability of the incapacitated person is likely to be of sufficiently short duration such that he or she should make the determination with respect to the proposed disposition when no longer disabled;
"3. whether the needs of the incapacitated person and his or her dependents or other person depending upon the incapacitated person for support can be met from the remainder of the assets of the incapacitated person after the transfer is made;
"4. whether the donees or beneficiaries of the proposed disposition are the natural objects of the bounty of the incapacitated person and whether the proposed disposition is consistent with any known testamentary plan or pattern of gifts he or she has made;
"5. whether the proposed disposition will produce estate, gift, income or other tax savings which will significantly benefit the incapacitated person or his or her dependents or other persons for whom the incapacitated person would be concerned”.
It is clear that Mr. DaRonco does not have sufficient capacity to make the proposed disposition himself and that his disability is likely to be permanent. Also, the needs of Mr. DaRonco and his wife and son can be met by a transfer of the assets as there will be no Medicaid "penalty period” of ineligibility and the transfer will prevent the total depletion of the family’s assets.
The beneficiaries of the transfer of assets are the natural objects of Mr. DaRonco’s bounty, and the transfer is consistent with the testamentary plan set forth in Mr. DaRonco’s last will and testament dated November 3, 1982. Also, because Mr. DaRonco’s assets will be transferred to his spouse, gift tax will be avoided upon the transfer, pursuant to Internal Revenue Code (26 USC) § 2523 (a).
Pursuant to section 81.21 (e) of the Mental Hygiene Law:
"(e) The court may grant the application if satisfied by clear and convincing evidence of the following and shall make a record of these findings:
"1. the incapacitated person lacks the requisite mental capacity to perform the act or acts for which approval has been sought and is not likely to regain such capacity within a reasonable period of time or, if the incapacitated person has the requisite capacity, that he or she consents to the proposed disposition;
*145 "2. a competent, reasonable individual in the position of the incapacitated person would be likely to perform the act or acts under the same circumstances; and
"3. the incapacitated person has not manifested an intention inconsistent with the performance of the act or acts for which approval has been sought at some earlier time when he or she had the requisite capacity or, if such intention was manifested, the particular person would be likely to have changed such intention under the circumstances existing at the time of the filing of the petition.”
As already discussed, the first condition has been met. Also, a competent, reasonable individual in the position of Mr. Da-Ronco would be likely to make such a transfer under the circumstances here present. There is no evidence that Mr. Da-Ronco has ever manifested an intention inconsistent with the proposed transfer of assets, which would provide for his care and the care of his family.
The proposed transfer is also consistent with section 81.20 (a) (6) (iv) of the Mental Hygiene Law, which provides that a guardian of the property shall "use the property and financial resources and income available therefrom to maintain and support the incapacitated person, and to maintain and support those persons dependent upon the incapacitated person.” It is also consistent with section 81.21 (a) (2) of the Mental Hygiene Law, which provides that the powers of a guardian may include the power to "provide support for persons dependent upon the incapacitated person for support, whether or not the incapacitated person is legally obligated to provide that support.”
Accordingly, that branch of the petition seeking the transfer of assets is granted. The order and judgment to be entered hereon shall provide, inter alia, for the retention by Joseph L. DaRonco of $3,200 from his assets prior to transfer pursuant to Social Services Law § 366 (2) (a) which funds may be used for his supplemental needs, and for the establishment of a burial fund in the sum of $1,500 for Mr. DaRonco, pursuant to 18 NYCRR 360-4.6 (b) (1) (ii).