OPINION OF THE COURT
Steven W. Fisher, J.
This is a motion, inter alia, to hold the defendants in contempt and to reimpose a provision of a prior judgment of this court closing the establishment known as “Wiggles” for a period of one year. Among the issues presented are whether the so-called 60:40 formula applies in determining if an establishment that regularly features live performances by nude women violates the New York City Zoning Resolution, and whether a room in such an establishment where the same women, now bikini-clad, perform “private dances” for patrons constitutes space allocated to a separate, nonadult use within the contemplation of the Zoning Resolution.
Briefly stated, the facts are these:
The City of New York brought this action under the Nuisance Abatement Law (Administrative Code of City of NY § 7-701 et seq.), seeking an injunction closing “Wiggles” on the ground that it constituted a public nuisance. The City claimed that “Wiggles” was an “adult establishment” operating in a C4 zon *1009 ing district in violation of section 32-01 (a) of the New York City Zoning Resolution.[1]
On August 14, 1998, following a trial, this court found that “Wiggles” was indeed an “adult establishment” operating in violation of the Zoning Resolution, and therefore constituted a public nuisance. As a result, the court ordered that a judgment be entered, inter alia, awarding a permanent injunction directing that “Wiggles” be closed to the public and that the defendants, their agents, and their employees, conduct no business therein for a period of one year or until further order of the court (see, City of New York v Wiggles, NYLJ, Aug. 21, 1998, at 26, col 4). A judgment to that effect was entered on August 20, 1998 (Lonschein, J.).
Thereafter, the defendants moved, pursuant to subdivision (c) of section 7-714 of the Administrative Code of the City of New York, to vacate the provisions of the judgment that directed the closure.[2] At the hearing on the motion, the defendants established, through undisputed evidence, that the premises had been reconfigured, reducing the area of the room in which live performances were to be featured, and creating four additional rooms, viz., a lounge, a “cigar” room, a pool room, and a television room, separated from the performance area by doors or curtained doorways. Each of these newly created rooms was to be accessible to patrons; each was designated for a specified, nonadult use.
Upon this evidence, the court found — and the City did not dispute — that no more than 38.59% of the customer-accessible floor space in the reconfigured “Wiggles” would be allocated to adult use. Applying the so-called 60:40 rule, the court concluded that, because less than 40% of “Wiggles” as reconfigured would be allocated to adult use, it would no longer constitute an “adult establishment” within the meaning of the Zoning Resolution, and therefore would no longer be a public nuisance, if operated as proposed.
Moreover, the defendants offered testimony to establish that they had planned and were prepared to institute measures, *1010 including the placement of video cameras and the presence of security personnel, to insure that the doors and doorways between the performance room and the other rooms on the premises remained closed, and that there was no physical contact between patrons and “Wiggles” employees anywhere on the premises. Based upon this evidence, the court concluded that, as required by Administrative Code § 7-714 (c), not only had the defendants demonstrated that the nuisance had been abated, but they had also submitted proof that the nuisance would not be created, maintained or permitted at the premises for the life of the injunction.
Finally, the defendants offered evidence, uncontradicted by the City at the hearing, that the value of the property was $80,623.36.
Accordingly, on September 18, 1998, the court signed an order and modified judgment (one paper) which granted the defendants’ motion and, pursuant to subdivision (c) of section 7-714 of the Administrative Code, vacated the provisions of the judgment that directed the closure of “Wiggles”, upon the defendants’ filing of a bond in the amount of $80,623.36, and upon condition that, using video cameras, managers, and other security measures, the defendants would make every reasonably diligent effort to see (1) that the doorways and portals that separate the main room in which the stage is located from the lounge, the “cigar” room, the pool room, and the television room remained closed except when used for passage between rooms; and (2) that there was no physical contact of any kind— and especially none of a sexual or suggestive nature — between any patron and any employee of the establishment on or about the premises.
The City has now returned to court, claiming to have evidence that the defendants have repeatedly violated the conditions of the order. Thus, on this motion, the City seeks an order, inter alia, (1) punishing the defendants for contempt of court, pursuant to section 753 (A) (1) of the Judiciary Law, for their alleged disobedience to the September 18, 1998 order; (2) closing Wiggles” for a period of one year, as originally directed in the judgment entered August 20, 1998; and (3) forfeiting the undertaking posted by the defendants.
The City also seeks an order granting reargument of the defendants’ prior motion to vacate the closure provisions of the judgment. The City argues that the 60:40 formula upon which the court relied in permitting Wiggles” to reopen does not apply to an “adult eating or drinking establishment”. Therefore, *1011 the City maintains, the defendants’ prior motion to vacate the closure provision should have been denied, and “Wiggles” should now be closed as directed in the original judgment even without a showing that the conditions of the order have been violated.
The court ordered a hearing on the City’s motion and, upon the proofs submitted in support of it, directed that “Wiggles” be closed pending a determination.
At the hearing, the City called three Buildings Department inspectors and four police witnesses assigned to the Queens Vice Enforcement Unit. The defendants offered the testimony of eight of their employees: two dancers, a barmaid, a bouncer, a floor manager, a security consultant, and two club managers.[3]
In several respects, the testimony offered was not in dispute.
The evidence established that, after the club reopened, customers were charged a fee of $10 to enter the main performance room in which nude women danced on a raised stage. As part of the regular operation of the club, when a dancer completed her performance, she would don a bikini bathing suit or similar outfit and mingle with the patrons.[4] When she struck up a conversation with a customer, she or the floor manager would inform him that “private” time was available in the “cigar” room. The customer would be told that he could accompany the dancer into the room for a charge of $50 for 15 minutes, $100 for a half hour, or $150 for a full hour.
If the customer accepted the offer, he would pay the floor manager and be escorted by the dancer through a curtained doorway into the “cigar” room which contained rows of lounges separated from each other by partitions. Inside, the customer would be directed to a lounge and provided with his choice of a nonalcoholic beverage or a cigar. He could then converse with the dancer or have her perform a dance for him. When time expired, the customer would be offered an opportunity to purchase additional “private” time at the same rates. If he declined, he was escorted back into the main performance room after being asked to tip the dancer.
The hearing testimony diverged sharply, however, in its description of the nature of the “private” dances performed in the “cigar” room.
*1012 Five of the City’s witnesses testified that they had each posed as a patron and had accompanied a dancer into the “cigar” room. Each witness testified that the dancer had performed a “lap dance” for him, sitting on or across his lap, and had made other deliberate and sustained physical contact with him of a sexual nature. According to these witnesses, one of the dancers had willingly displayed her bare breasts and vaginal area, two had declined to do so citing club rules, and two had furtively allowed brief glimpses at their uncovered breasts.[5]
The defendants’ witnesses, on the other hand, each insisted that rules prohibiting physical contact between dancers and patrons were prominently displayed, repeatedly communicated to patrons and dancers alike, and rigorously enforced. According to these witnesses, before entering the “cigar” room, each customer was warned that no physical contact with the dancer was permitted.[6] A bouncer would patrol the room to make sure that no such contact occurred.
Instead, the dancers would either engage the patron in conversation or perform a “simulated lap dance” which usually consisted of the dancer moving her body erotically, and coming within inches of the seated patron but making no physical contact with him. Any dancer caught violating the no-contact rule would be fired on the spot.
Moreover, the defendants’ witnesses testified that dancers performing “privately” in the “cigar” room were required to wear bathing suits or similar apparel, and were forbidden from displaying intimate body parts to the customers. This rule was also strongly enforced, although one of the managers of the club allowed that, on occasion, a dancer’s top might accidently fall off. Asked whether there were times when a dancer’s breast might be exposed, the manager testified: “Sometimes, a big breast, a small bra, it might fall off, uncontrollable.”
The City’s reargument application presents a threshold issue. In effect, the City maintains that the court need not address the credibility questions raised by the conflicting hearing testimony because the defendants’ earlier motion to vacate the closure provision of the judgment was wrongly decided and should now be denied. Specifically, the City contends that the *1013 court erred when it applied the 60:40 formula to an “adult eating or drinking establishment”.
In its earlier decision, relying on the language of the Zoning Resolution, its available legislative history, and the carefully reasoned analysis of Justice Stephen G. Crane in City of New York v Show World (178 Misc 2d 812 [Sup Ct, NY County]), the court concluded that an establishment with less than 10,000 square feet devoted to adult uses does not qualify as an “adult establishment” within the meaning of the Zoning Resolution unless it allocates at least 40% of its customer-accessible floor space to such uses. Thus, the court applied the 60:40 formula to determine whether “Wiggles” as reconfigured — and as the defendants proposed to operate it — would still constitute an “adult establishment”. Ultimately, the court found that it would not.
The City’s reargument motion, however, directs the court to the words “substantial portion” from which the 60:40 formula is derived {see, e.g., City Planning Commn Report on Adult Use Zoning Amendments, at 50-51 [Sept. 18, 1995]). Those words are used in some, but not all, of the definitional provisions of the relevant sections of the Zoning Resolution and, as the City correctly points out, do not appear in the definition of “adult eating or drinking establishment”.[7] Thus, the City reasons, the 60:40 formulation has no application to an “adult eating or drinking establishment”.
The flaw in the City’s argument, however, lies in the fact that the Zoning Resolution does not restrict the location of “adult eating or drinking establishments”; it restricts the location of “adult establishments”.
Section 32-01 (a) of the Zoning Resolution provides, in pertinent part, that “adult establishments are not permitted in * * * C4 * * * Districts.” (Emphasis supplied.) And section 12-10 of the Zoning Resolution defines “adult establishment” to encompass any “commercial establishment where a ‘substantial portion’ of the establishment includes an * * * adult eating or drinking establishment”. (Emphasis supplied.)
Thus, an “adult establishment” can be a commercial establishment of which a portion, but not all, includes an “adult eating or drinking establishment”. It would qualify as an “adult *1014 establishment”, and therefore fall within the reach of the Zoning Resolution’s restrictions, however, only if the portion that included the “adult eating or drinking establishment” were a “substantial portion”. And, according to the Zoning Resolution’s legislative history, “substantial portion” means at least 40% of customer-accessible floor space (see, City of New York v Show World, supra; see also, NY City Zoning Resolution § 12-10; City Planning Commn Report, op. cit, at 50-51).
In pressing its argument to the contrary, the City relies largely upon a recent oral decision by Justice Crane in which he suggests that the 60:40 formula does not apply to a single-use establishment used exclusively as an “adult eating or drinking establishment” (City of New York v Dezer Props., NY County, index No. 403271/98). This court has no quarrel with the notion that a commercial establishment used entirely as an “adult eating or drinking establishment” is an enterprise that falls within the restrictions of the Zoning Resolution regardless of the percentage of floor space upon which dancers actually perform. But the City’s position here goes well beyond that.
Indeed, the City appears to contend that any establishment which, in any portion of its premises, regularly features live performances by unclothed dancers necessarily constitutes, in its entirety, an “adult eating or drinking establishment” regardless of any other activity regularly conducted on the premises. Such a construction, however, would simply read the words “substantial portion” out of the Zoning Resolution’s definition of “adult establishment”, and is therefore unacceptable (see, e.g., Matter of Bliss v Bliss, 66 NY2d 382, 389 [1985]; McKinney’s Cons Laws of NY, Book 1, Statutes § 231).
Moreover, the City’s argument would encourage adult establishments to feature multiple adult uses. The Zoning Resolution’s definition of “adult establishment” broadly encompasses commercial establishments that include multiple adult uses. The full definition of “adult establishment” as set forth in section 12-10 of the Zoning Resolution is as follows: “An ‘adult establishment’ is a commercial establishment where a ‘substantial portion’ of the establishment includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof ’. (Emphasis supplied.)
Under the City’s interpretation, “Wiggles” is not entitled to the benefit of the 60:40 formula because the only adult use it features is live performance and therefore it is a single-use “adult establishment” rather than a multi-use establishment. *1015 Under that view, however, “Wiggles” could defeat the City’s argument, and gain the benefit of the 60:40 rule, if it reserved a portion of its main performance room for some additional adult use such as the sale of adult books or the showing of adult films. This court finds nothing in the language or history of the Zoning Resolution to suggest that the drafters intended to induce operators of establishments like ‘Wiggles” to diversify and increase the number of adult uses on their premises.
Hence, the court adheres to its view that the 60:40 formula applies in this case and, therefore, the City’s motion for reargument is denied. That does not mean, however, that the court will not consider anew the application of the 60:40 formula to “Wiggles” as currently operated.
When this court granted the defendants’ motion to vacate the closure provision of the judgment, it did so upon the representation that only the main performance room — consuming 38.59% of the customer-accessible floor space — would be allocated to adult use, and that the other areas of the establishment, including the “cigar” room, would be allocated to specified, nonadult uses. Clearly, that is not now the case.
Even accepting all the defendants’ evidence as true, it is undisputed that dancers first display themselves to customers in the main performance room, and then approach patrons in that room to offer “private” time at substantial rates. Fees for the “private” encounters are collected in the main room, and the dancers thereafter personally escort patrons from that room into the “cigar” room. Once inside, the dancers, dressed only in bikini bathing suits, entertain the patrons by performing erotic dances, including “simulated lap dances”, and then escort them back into the main room when time has expired. No customer is permitted into the “cigar” room with a woman other than a dancer whose presence is arranged and paid for in the main performance room.
Under these circumstances, to hold that the “cigar” room is not allocated to adult use simply because dancers do not expose intimate body parts while performing “private” dances would be to cast aside any reasonable and rational interpretation of the language and intent of the Zoning Resolution.
The court holds that, under any view of the evidence presented, the activity regularly conducted in the “cigar” room was inextricably connected with that in the main performance room and, therefore, the “cigar” room must be included in the calculation of the customer-accessible floor space allocated to adult use. And because the floor space of the two rooms taken *1016 together far exceeds 40% of the total floor space accessible to customers, the court holds that “Wiggles” has been shown once again to be an “adult establishment” operating in a C4 zoning district in violation of section 32-01 (a) of the New York City Zoning Resolution.
The court holds therefore that, contrary to the principal condition underlying the order of September 18, 1998, the defendants have permitted and maintained a continuing nuisance on the premises. The question remains, however, as to whether the undertaking posted by the defendants should be forfeited.
The order vacating the closure provision was made pursuant to section 7-714 (c) of the Administrative Code which requires the filing of an undertaking to insure that a defendant who is permitted to reopen premises will not create, maintain or permit a nuisance on it for the life of the judgment. Nevertheless, although the defendants here have failed to fulfill their obligation to confine the area allocated to adult use to less than 40% of the customer-accessible floor space, forfeiture of the entire undertaking is not necessarily required.
Liability secured by an undertaking is generally measured by actual damage caused to the party secured (see, e.g., 5 Weinstein-Korn-Miller, NY Civ Prac 2511.03). Thus, forfeiture of the entire undertaking does not follow automatically upon a failure to fulfill the obligation.
In the case at bar, no evidence has been presented as to any damage caused to the City by reason of the defendants’ failure to fulfill the condition of the modified judgment. Thus, on the present state of the record, the court is unable to determine what portion, if any, of the undertaking should be forfeited.
Finally, the court is not satisfied from the evidence presented that the defendants have engaged in conduct that would warrant holding them in contempt of court or subjecting them to the penalties authorized by the Administrative Code.
Accordingly, the motion to reimpose the closure provision of the judgment of August 20, 1998 is granted, and the storefront known as “Wiggles” shall be closed to the public, and the defendants, their agents, and their employees shall conduct no business therein for a period of one year as specified in the judgment. The motion to forfeit the undertaking is denied without prejudice to renew, and the undertaking filed by the defendants shall be vacated, and the surety shall be discharged, unless, within 20 days after the date of the order entered here *1017 with, plaintiffs renew the motion, demonstrating damages suffered by reason of the violation. In all other respects, the motion is denied.

. Section 7-703 (k) of the Administrative Code declares that “[a]ny building, erection or place * * * wherein there exists or is occurring a violation of the zoning resolution” is a public nuisance.

. The motion was originally one to hold the City of New York in contempt pursuant to sections 753 and 756 of the Judiciary Law for its alleged willful and deliberate failure to comply with the judgment. The court, sua sponte, converted the motion to one for an order vacating the closure provisions of the judgment, and extended the time for the City to reply.

. The testimony of one of the club managers was presented by way of stipulation.

. Dancers would perform on stage in groups of two for 15 minutes at a time.

. The dancer who displayed her breasts allegedly placed them in contact with the face and mouth of the City’s witness.

. Two of the City’s witnesses confirmed that they had been told by a manager that no physical contact was permitted in the “cigar” room. Each testified, however, that the prohibition had been ignored by the dancers once inside the room.

. Insofar as relevant here, section 12-10 (b) (1) of the Zoning Resolution defines an “adult eating or drinking establishment” to include “an eating or drinking establishment which regularly features * * * live performances which are characterized by an emphasis on ‘specified anatomical areas’ ”.