[697 NYS2d 41]

City of New York et al., Appellants, v Dezer Properties, Inc., et al., Respondents.

First Department, October 28, 1999

## APPEARANCES OF COUNSEL

*Margaret G. King* of counsel (*Barry P. Schwartz, Karen Griffin* and *Karen Selvin* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellants.

*Simon H. Rothkrug* of counsel (*Rothkrug & Rothkrug,* attorneys), for Dezer Entertainment Concepts, respondent.

*Herald Price Fahringer* of counsel (*Erica T. Dubno* on the brief; *Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria,* attorneys), for the Coalition for Free Expression, *amicus curiae.*

*Edward S. Rudofsky* of counsel (*Zane & Rudofsky,* attorneys), for Council of Regulated Adult Liquor Licensees, *amicus curiae.*

## OPINION OF THE COURT

LERNER, J.

This appeal results from one of the recent cases which arose following amendment of the New York City Zoning Resolution in 1995 with regard to adult establishments. At issue here is whether the "60%-40% substantial portion analysis" (hereinafter 60-40 rule) of section 12-10 of the New York City Zoning Resolution (hereinafter ZR § 12-10) should apply to single-use adult eating or drinking establishments and theaters, and if so, whether defendant's modifications to the subject establishment complied with the 60-40 rule.

In order to isolate adult entertainment in an effort to protect residential areas and retail districts from the pervasively negative effects of such establishments, section 12-10 was one of various provisions added to the Zoning Resolution. The provisions of the ZR § 12-10 (adult establishment) relevant herein are as follows:

"An 'adult establishment' is a commercial establishment where *a 'substantial portion' of the establishment includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination* thereof, as defined below * * *

"(b) An *adult eating* or drinking establishment is an eating or drinking establishment which regularly features[, *in relevant part, live performances emphasizing sexual activities or erogenous anatomical areas, or employees whose job includes regular exposure of such areas*] * * *

"For the purpose of determining *whether a 'substantial portion' of an establishment includes an* adult bookstore, *adult eating or drinking establishment,* adult theater, or other adult commercial establishment, or combination thereof, the following factors shall be considered (1) the amount of *floor area* and *cellar* space accessible to customers and allocated to such *uses*; and (2) the amount of *floor area* and *cellar* space accessible to customers and allocated to such uses as compared to the total *floor area* and *cellar* space accessible to customers in the establishment." (Emphases added.)

On July 22, 1998, the Department of Buildings issued Operations Policy and Procedure Notice number 4/98 (hereinafter OPPN 4/98) in an attempt to provide guidance to inspectors and others charged with enforcing the Zoning Resolution. With regard to adult eating or drinking establishments, OPPN 4/98 provided if an adult eating or drinking establishment has at least 40 percent of the floor and cellar areas that are accessible to customers available for adult use or performance and viewing, then a "substantial portion" of the establishment is devoted to adult use and it must conform with the Zoning Resolution. Three weeks later, the Department of Buildings issued OPPN 6/98 which advised that the 60-40 rule should not be applied to any establishment that consisted entirely of an eating or drinking establishment, a theater or another adult establishment or combination thereof.

In the summer of 1998, a number of City investigators visited defendant club and determined that it featured topless dancing and table dancing. As a result, in September of 1998, the City brought an action pursuant to the Nuisance Abatement Law (Administrative Code of City of NY § 7-701 *et seq.*), seeking an injunction of adult entertainment at defendant club. The motion court denied TRO relief. At a hearing, eight municipal witnesses detailed their observations of topless and table dancing at defendant club.

It was stipulated that the club is in an area regulated by ZR § 12-10, which restricts the locations at which "adult" establishments can be maintained or sited. On the first floor, topless dancing took place on stages in a large bar area. There were also private rooms behind the bar and on a second-floor mez-

zanine. The entertainment on the lower floor could be viewed from the mezzanine.

However, during the hearing, the club attempted alterations to comply with the 60-40 rule. Defendants put a tinted plexiglass divider around the mezzanine, which took up about 700 of the club's 4,000 square feet, or 28% of total floor space. Allegedly, altered lighting made the plexiglass opaque from the outside. No adult entertainment was offered in the second-floor balcony area. Customers on the balcony could see through the smoked plexiglass to the main area below.

The court found that conduct specified in ZR § 12-10 was taking place in the club and that defendant was an "adult eating or drinking establishment". The court went on to hold that the VIP Club could not be analyzed from the floor area ratio standpoint because it is a single use establishment. The preliminary injunction was entered; however, a stay was granted to allow defendant to seek a stay pending appeal. This Court entered an interim stay and Supreme Court proceeded with the trial on the merits. Before the trial court ruled on the evidence, defendant adopted a policy of admitting minors (obviously influenced by the trial court's ruling in *City of New York v Stringfellow's of N. Y.*, index No. 403724/98, *revd* 253 AD2d 110, *lv dismissed* 93 NY2d 916). Thereafter, this Court vacated the stay of the preliminary injunction and the VIP Club was closed on November 9, 1998.

Defendant brought a motion to vacate the preliminary injunction on the ground that the club admitted minors. The motion was denied on the ground that the VIP Club could not be considered as having customarily admitted minors inasmuch as the admission policy was instituted a few days prior to the motion.

Nonetheless, the trial court vacated the preliminary injunction the next day. In a decision issued over two months later, to wit, January 28, 1999, the trial court reasoned that there was no proof introduced at trial that defendant club excluded minors by reason of age and therefore, plaintiff City failed to establish that the VIP Club was an adult eating or drinking establishment.

Shortly after this Court's February 4, 1999 decision in *City of New York v Stringfellow's of N. Y.* (253 AD2d 110, *supra*), rejecting the minors' admission policy as a basis to circumvent adult establishment modifications, the trial court vacated its January 28, 1999 decision, reinstated the complaint and granted judgment for plaintiff. The court also indicated that

defendants should have an opportunity to comply with the 60-40 rule. A judgment in favor of the City was signed on February 10, 1999 with the proviso that defendants could move to modify or vacate the judgment upon proof the nuisance had been abated and that the Department of Buildings was satisfied with such proof. After further proceedings, the parties stipulated to the club reopening as a strictly nonadult establishment, with no dance performances, no stage and no private booths.

About a week later, defendants obtained a $50,000 bond, and moved for further modification to allow adult entertainment in less than 40% of the space. It was proposed that adult entertainment be confined to the mezzanine, which would be separated from the main area by solid sheetrock walls. The downstairs area would be converted to discotheque-style patron dancing, with restaurant seating, and with wide-screen TV showing sports, music videos and the like. The mezzanine area would have no additional entrance fee, but customers would not be allowed to bring food and drink from downstairs, and such commodities would cost more when obtained upstairs.

On or about February 22, 1999, defendants moved for an order vacating or modifying the injunction pursuant to subdivision (c) of section 7-714 of the Administrative Code of the City of New York on the ground that the nuisance had been abated because defendant club had been brought into compliance with the 60-40 rule and was no longer an adult establishment within ZR § 12-10. Opposing, the City asserted that the 60-40 rule did not apply to an adult eating and drinking establishment, and that if it applied, defendants had not demonstrated that the newly redesigned club would be in compliance with it.

On March 2, 1999, the court issued a memo order applying the 60-40 rule to eating and drinking establishments, but denied the defense motion on a finding that there were still fire safety problems and unrelated New York City Department of Buildings objections.

In oral argument in March of 1999, the City conceded that there was no longer any reason to oppose the motion other than the application of the 60-40 rule. The court ruled in favor of defendants.

The Zoning Resolution defines "adult establishment" to include *any* "commercial establishment where a 'substantial portion' of the establishment includes an * * * adult eating or drinking establishment". There is no exemption for an eating and drinking establishment. There is no restriction for an

establishment that, content aside, is solely an *eating* or *drinking* establishment or theater.

■ Clearly, the City's argument, that *any* single use establishment with an adult component is outside the 60-40 rule, is without merit. Such an erroneous interpretation does not give meaning and effect to the words "substantial portion" in the statute's definition of "adult establishment" (McKinney's Cons Laws of NY, Book 1, Statutes § 231).

■ Nonetheless, defendants have failed to prove compliance with the 60-40 rule and instead show only an attempt "to skirt its prohibition by means of superficial measures leaving the essentially non-conforming nature of their business intact" (*City of New York v Les Hommes*, 258 AD2d 284, 285, *lv granted* 93 NY2d 811). Even though the mezzanine occupies approximately 28% of the club's total floor space, the VIP Club is still essentially a topless bar. The front area requires a cover charge. There is no separate entrance or cover charge for the topless-dancing area. A two-tier price schedule makes clear that the defendants do not regard food and drink downstairs as a significant money maker. Even without performers, the downstairs area cannot reasonably be seen as anything but a staging area used in the course of attracting customers to the upstairs performances. There is still no conceivable reason why anyone uninterested in topless dancing would choose defendants' club over the many other nightclubs, bars and restaurants in the Flatiron district, many of which have no cover charge. Defendants' establishment is still clearly an integrated adult enterprise and of the type that was intended, under ZR § 12-10, to be removed from residential City areas (*see, Stringfellow's of N. Y. v City of New York*, 91 NY2d 382, 391-392), and their attempt to comply with the 60-40 rule is, as a matter of law, a sham.

Accordingly, the order of the Supreme Court, New York County (Stephen Crane, J.) entered March 18, 1999, which granted defendants' application to reopen, should be reversed, on the law, without costs, defendants' application pursuant to section 7-714 of the Administrative Code of the City of New York denied, and plaintiff granted a permanent injunction barring the use of the premises for any adult use.

ANDRIAS, J. (dissenting in part). While I agree with the majority that the so-called "60-40 rule" was properly applied by the IAS Court in determining whether a "substantial portion" of defendants' establishment includes an adult *eating* or *drink-*

ing establishment, I disagree that defendants have failed to prove compliance with such rule.

The City appeals from an order, entered March 18, 1999, in this nuisance abatement proceeding brought pursuant to title 7, chapter 7, subchapter 2 of the Administrative Code of the City of New York, in which the IAS Court (Stephen G. Crane, J.) granted defendants' motion to renew their application pursuant to Administrative Code § 7-714 and permitted the VIP Club to reopen "pursuant to plans just approved by the Department of Buildings creating a 60-40 configuration over the opposition of plaintiff as to the applicability to adult eating and drinking establishments of the substantial portion language of ZR 12-10." Section 7-714 (c) provides in pertinent part that, where a judgment has been entered awarding a permanent injunction directing the closing of premises housing a public nuisance, the owner may file a bond and submit proof to the court that the nuisance has been abated and will not be created, maintained or permitted, in which event the court may vacate the provisions of the judgment that directed the closing of the premises.

Here, the VIP Club has attempted to comply with the 60-40 rule by subdividing its premises into adult and nonadult uses. It erected first smoked plexiglass then sheetrock walls to separate its upstairs mezzanine where topless dancing is performed from its downstairs bar and restaurant area which was converted to discotheque-style patron dancing with large screen televisions showing sports programs and music videos. Justice Crane granted the club's application to amend the court's prior permanent injunction so as to permit the VIP Club to operate under its new configuration.

The City's only argument on appeal is that the 60-40 rule does not apply to a "single use adult eating or drinking establishment", but only to adult book and video stores. The majority properly rejects that argument, stating that such an erroneous interpretation does not give meaning and effect to the words "substantial portion" in the Amended Zoning Resolution's definition of "adult establishment". Nonetheless, it finds that defendant club has failed to prove compliance with the 60-40 rule because, even though the mezzanine occupies only 28% of the club's floor area, the entire VIP Club is still essentially a topless bar and that there is no conceivable reason why anyone would pay the $5 admission fee for use of the downstairs facilities except for the fact that there is topless dancing upstairs at no additional charge.

However, it is not for this or any other court to speculate as to why someone would choose to remain in the downstairs sports bar rather than partake of the adult entertainment upstairs in the concededly separate mezzanine section or vice versa. In fact, it should be noted that drinks cost more in the mezzanine than in the downstairs sports bar. The majority is essentially micromanaging the operation of this establishment rather than determining whether its management has complied with the floor space requirements of the Amended Zoning Resolution.

Section 12-10 of the Amended Zoning Resolution defines an "adult establishment" as "a commercial establishment where a 'substantial portion' of the establishment includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof, as defined below". The section further provides: "For the purpose of determining whether a 'substantial portion' of an establishment includes an adult bookstore, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or combination thereof, the following factors shall be considered (1) the amount of *floor area* and *cellar* space accessible to customers and allocated to such *uses*; and (2) the amount of *floor area* and *cellar* space accessible to customers and allocated to such uses as compared to the total *floor area* and *cellar* space accessible to customers in the establishment."

The 60-40 rule was originally suggested by the City Planning Commission as a general guideline to be used by enforcement agencies in considering the foregoing factors. As noted by the majority, the rule was adopted by the City Department of Buildings in a certain Operations Policy and Procedure Notice (OPPN) No. 4/98, issued July 22, 1998, "[t]o provide guidance as to the meaning of the phrase 'substantial portion' as used in the definition of 'adult establishment' in Section 12-10 of the Zoning Resolution". According to such OPPN, an adult establishment includes an adult bookstore if 40 percent of its total stock or 40 percent of its floor area and cellar space accessible to customers consisted of or contained stock in adult materials. As to adult eating or drinking establishments, theaters or other commercial establishments, it provided that if such use occupied at least 40 percent of the floor and cellar space accessible to the public, it constituted a "substantial portion" of the establishment. In other words, according to the Department of Buildings at the time, the 60-40 rule applied to

all adult establishments, including adult eating or drinking establishments.

Indeed, in *City of New York v Show World* (178 Misc 2d 812, 819), Justice Crane noted that it is not disputed that in a then pending Federal court action (*Amsterdam Video v City of New York,* 932 F Supp 550), in which the constitutionality of the Amended Zoning Resolution was in issue and the phrase "substantial portion" was being attacked as unconstitutionally vague, the Assistant Corporation Counsel representing the City stated, apparently in reliance on OPPN 4/98, that "a commercial enterprise allocating less than 40% of its accessible floor area to an adult use complies with the Zoning Resolution and that these guidelines should be read into the very text of the Zoning Resolution".

The term "single-use adult eating or drinking establishments and theaters" used by the City and the majority is not found in the Amended Zoning Resolution, but is derived from OPPN No. 6/98, issued by the Department of Buildings on August 13, 1998, superceding the foregoing OPPN 4/98 issued three weeks earlier, again ostensibly "[t]o provide guidance as to the meaning of the phrase 'substantial portion' as used in the definition of 'adult establishment' in Section 12-10 of the Zoning Resolution". In lieu of the previous provisions covering "Adult eating or drinking establishment, theater or other commercial establishment", it substituted part II, entitled "Adult Establishment", which provides that the 60-40 rule should be used in determining whether a "substantial portion" of a commercial establishment with two or more uses, at least one of which is not a bookstore, an eating or drinking establishment, a theater, or an " 'other adult commercial establishment' ", includes an adult use. The OPPN goes on to provide: "Section II shall not apply to a commercial establishment that is entirely an eating or drinking establishment, a theater, an 'other adult establishment,' or any combination thereof." In other words, according to the Department of Buildings' latest pronouncement, the 60-40 rule does not apply to single use adult establishments other than video or bookstores.

The constitutional issue having been disposed of (*Stringfellow's of N. Y. v City of New York*, 171 Misc 2d 376, *affd* 241 AD2d 360, *affd* 91 NY2d 382; *see also, Hickerson v City of New York,* 997 F Supp 418, *affd* 146 F3d 99, *cert denied sub nom. Amsterdam Video v City of New York,* 525 US 1067), the City now argues that Justice Crane erroneously applied a "substantial portion" analysis to a "single use"

eating or drinking establishment in that he read the Amended Zoning Resolution in a manner that frustrates rather than accomplishes the legislative goal; that the plain language of the statute does not warrant the court's reading; and, most significantly, that there is no basis in the legislative history of the phrase "substantial portion" to conclude that it was intended to be read as the IAS Court did in this case.

The City further argues that OPPN 6/98 is a reasonable reading of the Amended Zoning Resolution. In contrast to a book store with both general interest and adult books, it argues, there is no such neat organization and division of adult and nonadult aspects that can be utilized in a single use eating or drinking establishment with topless entertainment. It further contends that the legislative drafters intended such distinction inasmuch as the concept of a store that sells both adult and nonadult books and videos has long existed in contrast with the previously nonexistent concept of a semi-adult, semi-nonadult eating and drinking establishment.

However, neither on its face nor in its legislative history is there any basis in section 12-10 for affording different treatment to adult bookstores than to adult eating or drinking establishments whether characterized as single use or otherwise. In fact, during the course of public review of the proposed amendments to the Zoning Resolution, concerns were raised which seemed to suggest that adult book and video stores, in particular, should be subject to lesser regulation than other sorts of adult uses. The City Planning Commission, in its September 18, 1995 report, responded to such concerns, noting that *all* of the adult uses which would be covered by the proposed amendments had been shown to produce adverse secondary effects. As a result, the Commission found: "Nothing in the studies or in the public testimony justifies distinctive treatment of *any* adult use" (emphasis added). Such approach was clearly adopted in the Amended Zoning Resolution.

The majority, while rejecting the City's argument that the 60-40 rule applies only to adult book or video stores and not to so-called single use eating or drinking establishments, nevertheless implicitly accepts these latter arguments by finding, in effect, that despite the undisputed evidence that adult entertainment is limited to the VIP Club's mezzanine, which occupies approximately 28% of the club's total floor space, the entire VIP Club is essentially a topless bar and there is no way to differentiate between the activities and entertainment provided downstairs and the entertainment offered upstairs in

the mezzanine. This seems to accept the only argument raised by the City on appeal in this regard, i.e., "a more realistic view of the use of the club would be that the floor space is 'used' for adult purposes every time a patron enters and traverses supposedly non-adult floor space on the way to the adult portion of the club". However, there is simply nothing in the record to support a conclusion that the activities offered downstairs are inextricably intertwined with the adult entertainment presented upstairs (*compare, City of New York v Wiggles*, 178 Misc 2d 1007, 1015). To accept the majority's reasoning would be to conclude that there is no way, short of going out of the bar and restaurant business downstairs, for defendants to abate the preexisting nuisance. Nothing in the Amended Zoning Resolution or the Administrative Code suggests such a drastic solution.

Moreover, the City's present argument was not raised before the IAS Court. Its sole argument there was that the 60-40 rule does not apply to adult eating or drinking establishments or adult theaters. The City specifically agreed to the VIP Club's application to reopen under the 60-40 configuration that had already been approved by the Department of Buildings and agreed that such configuration does not violate any departmental regulation or building code and that the adult portion of the club is allocated less than 40 percent of the total floor space accessible to the public.

In the only other case decided by this Court on the 60-40 issue, *City of New York v Les Hommes* (258 AD2d 284, *lv granted* 93 NY2d 811), this Court unanimously affirmed the IAS Court's finding that more than 40 percent of the floor space of that combined bookstore and mini-theater was devoted to adult uses. This Court found that approximately 53 percent— undeniably a "substantial portion" of the store's floor space— remained devoted to nonconforming adult uses and that accordingly Les Hommes was properly classified as an adult establishment under the Amended Zoning Resolution, thus implicitly approving the 60-40 rule (258 AD2d, at 285).

Based upon this Court's decision in *Les Hommes* (*supra*) and the majority opinion, it is clear that we have adopted the 60-40 rule in determining whether a substantial portion of an establishment's *floor space* is devoted to adult entertainment and that we have rejected the City's argument that the 60-40 rule does not apply to adult eating and drinking establishments and adult theaters, but only to adult video and book stores. The only question that remains is whether the offend-

ing establishment has reconfigured its premises sufficiently to comply with the 60-40 rule and obtained the necessary approvals for its renovations. Such issue will have to be determined factually on a case-by-case basis at the trial level.

That is not to say that, in an appropriate case, the courts cannot find that such reconfiguration is a sham. Justice Crane, in *City of New York v Show World* (*supra*), which involved three cases, one of which resulted in our decision in *Les Hommes*, recognized the absurdity of a Pavlovian approach to the 60-40 rule and used the example of a one room establishment placing a flimsy screen across the room at the 40 percent mark and denoting the smaller area of the room as the portion devoted to adult entertainment (*supra,* at 823-824). However, although the City, in its affidavit in opposition below, raised the question of whether the purported 60-40 breakdown is legitimate or a sham, at the hearing on defendants' motion it apparently abandoned such line of inquiry and essentially stipulated that there was nothing wrong with defendants' reconfiguration plan and that less than 40 percent of the floor space was allocated to adult entertainment.

Thus, where the City did not pursue the issue below, we should not find that the downstairs bar area is a sham. The City's sole argument in that respect is that the 60-40 rule does not apply and, if it does, that the downstairs area is "used" for adult purposes every time a patron walks through on the way to the mezzanine area, which would require a determination of "how many patrons use the adult portions of the club each night, so as to properly allocate the usage of the entire club." However, according to the explicit provisions of section 12-10, the "substantial portion" issue has to be determined in spatial terms, i.e., floor space, rather than in terms of percentage of use or income derived from adult uses.

Accordingly, I would affirm the order appealed from.

Nardelli, J. P., Williams and Wallach, JJ., concur with Lerner, J.; Andrias, J., dissents in part in a separate opinion.

Order, Supreme Court, New York County, entered March 18, 1999, reversed, on the law, without costs, defendants' application pursuant to section 7-714 of the Administrative Code of the City of New York denied, and plaintiffs granted a permanent injunction barring the use of the premises for any adult use.